### 46449.   WATSON et al. v. ELBERTON-ELBERT COUNTY HOSPITAL AUTHORITY.

WHITMAN, Judge. Plaintiff George R. Watson sued for personal injuries allegedly negligently inflicted upon him while a patient in the defendant's hospital. Watson's wife sued in the same action to recover for alleged loss of affection, consortium, society and companionship. Watson was being treated for a coronary disorder which included oxygen therapy and the utilization of an oxygen tent. A flash fire occurred causing burns to Watson's head, neck, chest and arms. The defendant hospital authority previously made a motion for summary judgment supported by depositions and affidavits, which was denied, appealed and affirmed by this court (*Elberton-Elbert County Hosp. v. Watson,* 121 Ga. App. 550 (174 SE2d 470)), the court holding that the numerous and various conflicts as to the cause of the fire and the proximate cause of the injuries received presented a question for jury determination.

There was a trial before a jury. The Watsons appeal from the judgment on a verdict in favor of the defendant. *Held:*

1. The first enumeration of error is addressed to an order entered by the court in the discovery phase of the case. Plaintiffs had moved the court to require production of the oxygen equipment for inspection and photographing. Defendant had moved the court for a protective order requesting that either the plaintiffs' request be denied or if allowed, that the plaintiffs not be allowed to disassemble the machine or change the burn, soot and smoke marks on it in any way. After a hearing the court entered an order allowing an inspection by plaintiffs' designated expert and further allowed the plaintiffs to operate the machine for up to 2 hours. However, in response to the defendant's motion, the court directed the plaintiffs not to change the machine's appearance and not to do any disassembling.

The plaintiffs' enumeration of error is: "Where the thrust of plaintiffs' case was directed toward the view that plaintiff's injuries were inflicted as a result of defendant's use of defective oxygen equipment, and where the trial court denied plaintiffs' expert the opportunity to remove the panels to said equipment and inspect said equipment based on defendant's contentions that to remove said panels would destroy evidence, when in fact it was uncontradicted that defendant had itself prior to this occasion already removed the panels at least three times, it was harmful error."

Our discovery rules provide for discovery of the type sought by plaintiffs upon motion "showing good cause." CPA § 34; *Code Ann.* § 81A-134 (a) (Ga. L. 1966, pp. 609, 646, as amended). Federal Rule of Civil Practice 34, after which CPA § 34 was patterned, has since been relaxed so as to eliminate the requirement for showing "good cause." But even as revised "[t]he rule necessarily vests in the . . . court a sound discretion whether and within what limits and under what conditions inspection of documents or things should be ordered." Wright & Miller,

Federal Practice and Procedure: Civil § 2215. And see *Dean v. Gainesville Stone Co.,* 120 Ga. App. 315, 316 (170 SE2d 348).

We find no abuse of discretion since it appears from the record that plaintiffs' expert, one Theodore Buhler, had previously conducted an inspection and photographed the machine. Furthermore, the trial court may have concluded that repeated removal and handling of the machine's panels might destroy smoke and burn evidence which the defendant swore it intended to introduce. Even if there was an abuse of discretion regarding the order, there was no prejudicial error requiring reversal since it appears from the transcript that plaintiffs' other expert, one Thomas Maxwell, was afforded an opportunity to examine the machine in open court. Maxwell removed the rear panel of the machine, inspected it internally, plugged it in and operated it, and testified as to his opinion of the machine's condition and the possibilities of it having caused the fire.

2. The discovery order allowed the plaintiffs' expert to inspect in the manner above set forth, but directed that plaintiffs furnish defendant with a copy of all reports, notes and photographs made by plaintiffs' expert within 7 days of the inspection. Plaintiffs enumerate this requirement as error. There was no error. Plaintiffs argument as to violation of attorney's work product is misplaced. No attorney work product is involved. Wright & Miller, Federal Practice and Procedure: Civil § 2029. The reports, notes and photographs which might have been produced by plaintiffs' inspection are items which are clearly discoverable by the defendant under the same discovery rule (CPA § 34) which the plaintiffs invoked. There was no error in ordering them made available to defendant.

3. The record of the proceedings shows that a nurse, who was an employee of the defendant at the time of the fire, was subpoenaed by the defendant and was present during the trial of the case, but was not called to testify by

either the defendant or the plaintiffs and was excused after both sides had rested their cases in chief. Thereafter plaintiffs on rebuttal sought to read into evidence certain of the nurse's testimony from a deposition. The court sustained the defendant's objection to the testimony. The use of depositions on the trial of a case is controlled by the Civil Practice Act, CPA § 26 (d) (*Code Ann.* § 81A-126 (d); Ga. L. 1966, pp. 609, 635, as amended). It does not permit the use of a deposition under the circumstances presented here. There was no error.

4. The fourth enumeration is that: "The court was in error in allowing defendant, over plaintiffs' objection, to utilize in court an oxygen tent or canopy which was not identified or established to be even similar to the tent or canopy which was in use at the time plaintiff was burned."

Plaintiffs' witness, Thomas Maxwell, testified at great length concerning the oxygen equipment. It was brought into the courtroom. He testified that the equipment was used with a tent or canopy and testified how the air circulating and flowing past the canopy over the machine could set up a difference in polarity or create an electrical field with a different potential from that of the patient's body. Defendant's expert witness testified that about six days after the fire he inspected the machine and had observed a canopy in the vicinity of the machine which was smoked up and about 20% of its area melted. He testified that the canopy exhibited in the courtroom was "substantially like" the one he had observed. There was no error. *Norman v. Norman,* 103 Ga. App. 626 (4) (120 SE2d 42); *Hill v. State,* 211 Ga. 683 (2) (88 SE2d 145).

5. State Fire Marshal, Homer Mauldin, was asked what his investigation in the room revealed. Plaintiffs objected on the ground that it had not been shown that the room was still in the same condition as it was immediately following the fire.

Fire Chief Foster testified that he came to the scene and made sure the fire was out. Then the door to the room

was closed "to keep the stuff where we could examine it and see what caused the fire, or to try to see what caused it." He then went and called the State Fire Marshal who was in Athens at the time. The State Fire Marshal got there about three or four hours after the fire happened and undertook his investigation.

There was no error in overruling the objection. The practicalities of proof do not require that a party negative all possibility of tampering. He need only establish that it is reasonably certain that such has not occurred. *Interstate Life &c. Ins. Co. v. Whitlock*, 112 Ga. App. 212, 225 (144 SE2d 532).

6. State Fire Marshal Mauldin testified that during his investigation he found a partially burned pajama top on the floor and there was debris lying around. He was then asked: "State whether or not there was anything laying with the pajama top?" Plaintiffs objected that the question was leading but the objection was overruled. The witness responded that there was a Salem cigarette pack lying very near.

As observed by Professor Green, the Georgia law is less than definite on what constitutes a leading question. Green, Georgia Law of Evidence § 128 (1957). But even if we view the question here involved as leading, there was no reversible error. "It is within the discretion of the trial judge to permit leading questions to be propounded to a witness in the direct examination, or he may sustain objection thereto, as the ends of justice and the ascertainment of the truth seem to require; and this discretion will not be controlled, unless it be made to appear that injury resulted to the party complaining. [Citations.]" *Tippins v. Lane*, 184 Ga. 331 (1) (191 SE 134). Fire Chief Foster who was with Mauldin also testified that a cigarette package was found "right close to the pajamas." Neither injury nor abuse of discretion has been made to appear. There was no error.

7. It appeared before the jury was struck that two members of the 24 member panel were related to employees of the

defendant hospital. One was a cousin of a maintenance man who was employed by the hospital at the time of the fire, but not at the time of the trial. The other prospective juror volunteered on voir dire that she may be a bit partial toward the hospital because her niece worked there.

Both jurors were examined by the court as to whether they could fairly and impartially render a verdict and both apparently satisfied the court that they could.

Plaintiffs' motion to disqualify the two prospective jurors for cause was overruled. Neither was chosen to serve. There was no error.

"Relationship to an employee of a corporation does not in this State render a juror incompetent, as a matter of law, to serve on the trial of a case in which the corporation is a party." *Hill v. Chattanooga R. &c. Co.,* 21 Ga. App. 104 (8) (93 SE 1027); *Wilson v. Atlantic C. L. R. Co.,* 116 Ga. App. 193, 194 (156 SE2d 463).

*Judgment affirmed. Hall, P. J., and Eberhardt, J., concur.*
ARGUED SEPTEMBER 16, 1971—DECIDED NOVEMBER 12, 1971—REHEARING DENIED NOVEMBER 29, 1971—

*Telford, Stewart & Stephens, Charles W. Stephens, J. Cleve Miller,* for appellants.

*Grant & Matthews, William F. Grant, Carlton G. Matthews,* for appellee.