## 32330. HURT v. THE STATE.

BOWLES, Justice.

Appellant, Sidney Farley and Willie James Paul, were jointly indicted by the Grand Jury of Putnam County, Georgia for the separate offenses of rape and murder of one Charlotte Cutwright. Co-defendant Paul filed a motion for severance which was granted. Appellant and Farley were tried together and were found guilty by a jury of both offenses. Appellant received a life sentence for murder and a 20-year sentence for rape to run consecutively. From the judgment and sentence he appeals to this court.

Resume of the Facts

The victim, Charlotte Cutwright, estimated to be between 60 and 66 years of age, moved into a new house in Eatonton, Putnam County, Georgia on May 21, 1976. Several neighbors and friends were in and about the house during the day helping her to move. That evening, Mary Cutwright, a granddaughter, left her grandmother's house accompanied by two friends, George and William Reese. Remaining at the house at the time were the victim, William James Paul, Al Banks and Leon Hurt, appellant's brother. Later that evening George Reese and Mary Cutwright picked up appellant and co-defendant Sidney Farley, and dropped them off near the house. They both indicated they wanted to visit the deceased. Some time after midnight George Reese and Mary Cutwright returned to Charlotte Cutwright's house where they encountered Farley who said he could not awaken the deceased. Upon investigation they found the deceased lying diagonally on the bed with her clothes pulled up. They could find no pulse at the time. Several witnesses indicated that a cap seen lying on the bed belonged to the defendant Farley. The police were summoned.

Leon Hurt and Allen Banks testified that after Mary Cutwright left with George and William Reese, the co-defendant Willie James Paul sent them to get some liquor. When they returned a short time later they saw appellant standing in the yard and co-defendant Farley inside the screen door. When Leon Hurt attempted to enter the house with the liquor Farley tried to push him back. Additionally, appellant tried to keep the two witnesses from entering the house. Leon Hurt and Allen Banks entered the house anyway where they saw Willie James Paul in bed with Charlotte Cutwright. They testified to the facts which indicated that defendant Paul had just completed an act of intercourse with the deceased. There was testimony that the victim was moaning at that time. Defendant Paul was seen walking away laughing and co-defendant Farley was heard to say that he was second. The victim was later found to be dead. An autopsy was performed on her person revealing lacerations on the inside of her labia majora, tears in the

skin of the perineum, tears in the back wall of the vaginal canal, contusions, bruising and ecchymotic hemorrhaging of the entire circumference of the vaginal organs. There was considerable blood on her clothing.

Dr. James Dawson, who qualified as an expert, gave his opinion that the cause of death was shock, based on fluid in her lungs, the accumulation of blood in various organs and other physical facts determined in the autopsy. He explained that shock could be brought on by loss of body fluid, severe pain or an extreme emotional state or fear of pain. He pointed out that the victim defecated before death which comes as a result of extreme pain in many cases. Fecal material was found on a pair of pants which appellant was wearing when arrested. The victim had a blood alcohol content of .23 per cent at death.

Appellant and Farley made separate statements to separate GBI agents, in separate rooms, at approximately the same time in the early morning of the following day. A Jackson v. Denno hearing was held to determine the voluntariness of those statements. Following that hearing, one of the investigating officers testified that the appellant freely and voluntarily made the following statement: "Earlier tonight Willie James Paul and I went to Charlotte Cutwright's house after dark. When we arrived she was lying on the bed asleep. She did not have any panties on. Willie James Paul got on her first and then I did. She was hollering for us to get off, she had awakened up. After I got off of her, Willie James Paul got on her again. Leon Hurt and Al Banks were watching while Willie James was on top of her. She went to sleep while Willie James was on her a second time."

Farley gave a similar statement to another officer which differed only in that Farley stated the victim was not moving while the three men had intercourse with her.

The defense contended that appellant and Farley were mentally retarded and could have been easily led into making their statements to the officers. Defendants introduced at both the Jackson v. Denno hearing, and at the trial, the testimony of several witnesses in regard to their inability to read, understand, or waive rights.

Enumeration of Errors

1. Appellant's enumerations numbered 1, 2 and 12

complain that the verdict is contrary to law, contrary to the evidence, and the trial court erred in overruling appellant's motion for a directed verdict of acquittal at the conclusion of the state's evidence.

While the evidence is not conclusive of the defendant's guilt, it is sufficient. The jury trying the case, from the evidence presented, could conclude that the victim died from shock caused by fear and extreme pain inflicted upon her person. They could conclude the victim was asleep when raped and woke up. They could conclude that she had been raped from the physical facts illustrated by the injuries to her person. They could also conclude that two or more of the parties involved were acting in concert, when they had intercourse with her in turns and when two attempted to keep witnesses out of the house on or about the time of the occurrence. This court does not pass on the weight of the evidence but on the sufficiency thereof to sustain the verdict. *Ridley v. State,* 236 Ga. 147 (223 SE2d 131) (1976); *Strong v. State,* 232 Ga. 294 (206 SE2d 461) (1974); *Ingram v. State,* 204 Ga. 164 (48 SE2d 891) (1948). If there is any evidence to support the findings of the jury, and no error of law appears the verdict and judgment should not be disturbed. *Mitchell v. State,* 236 Ga. 251, 257 (223 SE2d 650) (1976); *Bethay v. State,* 235 Ga. 371 (219 SE2d 743) (1975); *Proveaux v. State,* 233 Ga. 456 (211 SE2d 747) (1975). We must view the evidence in the light most favorable to the verdict rendered. *Johnson v. State,* 231 Ga. 138, 139 (200 SE2d 734) (1973). On the question of raping a sleeping female, see *Brown v. State,* 138 Ga. 814 (76 SE 379) (1912).

2. Appellant's enumeration no. 3 contends that the trial court erred in admitting into evidence, over timely objection, the purported confession of appellant obtained by one of the investigating officers, claiming that the confession was illegally obtained in derogation of appellant's constitutional rights.

The trial court held a separate Jackson v. Denno hearing regarding the admissibility of the purported confession. Appellant contends that the burden rests on the state to demonstrate clearly that the defendant knowingly and intelligently waived his privilege against self-incrimination and his right to counsel. With this we

find no argument. At such a hearing, the state is required to show voluntariness only by a preponderance of the evidence. *High v. State,* 233 Ga. 153 (210 SE2d 673) (1974); *Pierce v. State,* 235 Ga. 237 (219 SE2d 158) (1975).

Once a trial court determines that a statement was freely and voluntarily given in compliance with the requirements of Jackson v. Denno, 378 U. S. 368, the court may properly allow the statement into evidence. *House v. State,* 232 Ga. 140 (205 SE2d 217) (1974); *Callahan v. State,* 229 Ga. 737 (194 SE2d 431) (1972); *Wilson v. State,* 229 Ga. 395 (191 SE2d 783) (1972).

Fact findings and credibility findings in regard to admissibility of such a statement based on voluntariness, made by a trial judge must be accepted by this court unless such determinations are clearly erroneous. *Johnson v. State,* 235 Ga. 486 (6) (220 SE2d 448) (1975). The record is devoid of any threats, promises, coercion or other improper conduct which would void the statement. On the contrary, there was testimony from the GBI agent involved, that all actions were strictly voluntary on the part of the defendant. The question left is whether or not the defendant was capable or incapable of making a knowing and intelligent waiver of his rights. The defendant was present in court during all the proceedings, and the trial judge could observe his actions and his demeanor. The GBI agent testified that appellant signed a waiver of counsel form after he had explained the terms of the form to him. The agent also discussed the meaning of a waiver of a lawyer with him and defendant raised the question as to whether or not signing this waiver, would prevent him from having a lawyer when the case was tried. At the time, defendant was 17 years of age, appeared to understand his rights and was not under the influence of any drugs. Defendant looked over the waiver form but said he couldn't read very well, so the agent read the form to him. At the time the agent did not know what had occurred at the victim's home that night, and appellant was asked to relate the events that had occurred, which he readily did. Agent Harris testified that appellant appeared to understand the questions asked. When Agent Harris informed defendant that he could have an attorney immediately, he responded "stated that

he had talked to me without one." In opposition to this defendant introduced a record in his behalf, made approximately three years before, which stated that appellant could print and read on a very low level. He also introduced witnesses who said that defendant was moderately retarded, but would know rape was wrong; attended school every day; had a mind of his own sometimes; would understand if told that he could not do something; would understand "you can have a lawyer"; could run errands; could see something and tell about it. The trial judge concluded that the statement made to Agent Harris was admissible in evidence. We will not disturb that ruling.

3. Appellant's enumeration no. 4 complains that the trial court erred in admitting into evidence over timely objection, the purported confession of appellant obtained by police officer Folds contending that said confession was illegally obtained in derogation of appellant's constitutional rights.

Appellant urges the same argument in support of this ground that he did in support of enumeration no. 3. We reach the same result.

4. Appellant's Enumerations 5 and 6 contend that the trial court erred in admitting into evidence over timely objection, a purported confession of appellant, obtained by police officer Folds, as this statement by appellant was not furnished to his counsel in accordance with the trial court's pre-trial discovery order; and for the further reason that no Jackson v. Denno hearing was afforded appellant outside the presence of the jury to determine its voluntariness.

The first contention is controlled adversely to appellant by this court's decision in *Hudson v. State,* 237 Ga. 443 (228 SE2d 834) (1976). Here, appellant's counsel had full opportunity of cross examination of the witness involved, and also had full opportunity to introduce the notes themselves if there was a variance as contended.

As to the second point, we have searched the record and cannot find where counsel for this appellant requested a Jackson v. Denno hearing in regard to the purported confession of his client made to Officer Folds. This court said in *Watson v. State,* 227 Ga. 698 (1) (182

SE2d 446) (1971), "Absent a proper objection and any evidence that the defendant's in-custody statement was involuntary, the admission of such statement in evidence without a hearing as to its voluntariness was not error." According to the witness' testimony, appellant was advised of his constitutional rights prior to any statement being made. There was evidence of voluntariness, no evidence of involuntariness, and no proper request for hearing, or other objection made in that regard. He cannot now complain. See Wainwright v. Sykes, — U. S. — (97 SC 2497, 53 LE2d 594) (1977).

5. Enumeration No. 7 complains that the trial court erred in admitting into evidence, over timely objection that the same was hearsay, the testimony of police officer Folds when he said "that they were carrying on about one in particular carrying on about her grandmother had been killed . . ." at the time of the officer's arrival on the scene, and which was closely related to the time of the discovery of the body. We cannot conclude that this constituted hearsay as "carrying on" would more indicate behavior than conversation. Even if it referred to words or conversation it would not be objectionable as it explains the conduct of the officer in carrying out his further investigation. Code Ann. § 38-302; *Tanner v. State,* 228 Ga. 829 (3) (188 SE2d 512) (1972).

6. Enumeration no. 8 contends that the trial court erred in admitting into evidence over timely objection the testimony of GBI Agent Harris relating to the waiver of appellant's constitutional rights, in that counsel for appellant was not furnished with a copy of said waiver prior to trial pursuant to the trial court's pre-trial discovery order.

At the stage of the trial, involving this objection, state's counsel had inquired of a GBI agent whether or not he had advised the defendant of his constitutional rights. In response, the agent replied that he had advised him of the Miranda warning. State's counsel then asked him if he read it from a card, and the witness replied "no, sir, I read it from one of our Miranda waiver of counsel sheets." At this point defendant's counsel objected saying: "Your Honor I would object to any oral reference to this statement on the same basis that we had before." The

court's ruling follows: "I'll admit the, what the GBI Agent Harris informed him as to his constitutional rights, but I will not admit the document itself." Appellant contends that inasmuch as the district attorney did not furnish his counsel with a copy of the waiver signed by appellant, in keeping with a Brady motion, and a pre-trial order of the court requiring the state to supply him with copies of any statements made, he cannot now testify in that area. We do not hold that an accused is entitled to receive from the state any documents which are not favorable or arguably favorable to him. We do hold the failure of the state to furnish the defendant with any such document does not preclude the court from permitting the witness to testify to what he orally advised the defendant. There is no error.

7. Appellant contends that the trial court committed error in admitting into evidence, over timely objection state's exhibit no. 9, a bedspread, saying that there was a break in the chain of custody. This bedspread was on the bed of the decedent when she was carried from the house to the hospital and was positively identified as such by one of the investigating officers. Defendant's objection stated "there's a gap in the chain, getting it from the hospital to the, to the funeral home. . .We'll object to it."

Items of evidence which are distinct and recognizable physical objects are admissible in evidence without the necessity for showing the chain of custody. *Roland v. State,* 137 Ga. App. 796 (224 SE2d 846) (1976); *Floyd v. State,* 137 Ga. App. 181 (2) (223 SE2d 230) (1976); *Watson v. Elberton-Elbert County Hospital Authority,* 125 Ga. App. 112 (186 SE2d 459) (1971); *Starks v. State,* 113 Ga. App. 780 (1) (149 SE2d 841) (1966).

8. Enumeration no. 10 complains that the trial court erred when it allowed the district attorney to reopen the evidence and produce further evidence in regard to the custody and identity of state's exhibit no. 3, the pants of the appellant. Reopening evidence is in the sound discretion of the trial court and will not be disturbed when no abuse of discretion is shown. *Mobley v. State,* 221 Ga. 716 (146 SE2d 735) (1966); *Britten v. State,* 221 Ga. 97 (4) (143 SE2d 176) (1965); *Miller v. State,* 226 Ga. 730 (177 SE2d 253) (1970).

9. Appellant makes the same point in enumeration

no. 11, with reference to state's exhibits nos. 4, 7 and 8, and we reach the same result.

10. Appellant's Enumeration no. 13 complains that the trial court erred in ruling that defendant's exhibit no. 1, the psychological evaluation of Otis Hurt, Jr., was inadmissible in evidence.

Appellant claims that the document was admissible under Code Ann. § 38-711 as a business record. We have read the transcript in detail, and it fails to disclose that appellant laid the foundation necessary to introduce such a document under the provisions of that Code section. But assuming that he had done so, the document as a whole, contained conclusions, opinion, estimates, impressions and recommendations of a third party, not before the court. The document having included such things, it is not admissible as a whole. *Martin v. Baldwin,* 215 Ga. 293 (2c) (110 SE2d 344) (1959); *Taylor v. State,* 229 Ga. 536, 540 (192 SE2d 249) (1972); *Emmett v. State,* 232 Ga. 110 (6) (205 SE2d 231) (1974); *Wallis v. Odom,* 130 Ga. App. 437 (3) (203 SE2d 613) (1974).

11. Appellant complains that the trial court erred in charging the jury as to conspiracy, claiming that there was no evidence that appellant was a party to any conspiracy, and that said charge was prejudicial to him.

The question of the existence of a conspiracy is ultimately for the jury to determine. *Hutchins v. State,* 229 Ga. 804 (194 SE2d 442) (1972). The existence of a common design or purpose between two or more persons to commit an unlawful act may be shown by direct or circumstantial evidence. *Chappell v. State,* 209 Ga. 701 (75 SE2d 417) (1953); *McLeroy v. State,* 125 Ga. 240 (2) (54 SE 125) (1906). We have carefully reviewed all of the evidence and conclude that there was sufficient evidence to authorize the conspiracy charge. *Wisdom v. State,* 234 Ga. 650, 656 (217 SE2d 244) (1975).

*Judgment affirmed. All the Justices concur.*

ARGUED JUNE 13, 1977 —DECIDED SEPTEMBER 8, 1977 — REHEARING DENIED SEPTEMBER 27, 1977.

*Donald W. Huskins,* for appellant.

*Joseph H. Briley, District Attorney, Arthur K. Bolton, Attorney General, Kirby G. Atkinson, Assistant Attorney General,* for appellee.