## WESTERN & ATLANTIC R. R. CO. *v.* STAFFORD.

*Simmons, C. J.*—1. There was no error in allowing a physician to testify that one who had received violent personal injuries, and who was under treatment in a boarding-house, on the day upon which he was hurt, did not know he had previously on the same day, after receiving the injuries, been in the physician's office; it not appearing, upon cross-examination or otherwise, that the physician's knowledge on this subject was not derived from personal observation of the patient's condition or that it depended solely upon statements made by the latter.

2. Under the evidence in this case, the court did not err in charging that a failure of the defendant's servants to comply with a city ordinance regulating the speed of trains within the corporate limits was negligence, nor in failing to submit to the jury the question whether such ordinance was reasonable or unreasonable with reference to the locality where the injury was inflicted.

3. The court erred in not allowing a diagram of the place where the collision occurred to be sent out with the jury, it having been prepared by a civil engineer who testified to its correctness, and having been admitted in evidence.

4. The charge of the court to the effect that if the defendant's agents were guilty of wilful negligence in running the train, or did so "in reckless disregard of the life or safety of people," the plaintiff was entitled to recover, and his recovery should not be lessened notwithstanding the jury might believe that by exercising ordinary care he might have avoided the consequences of the defendant's negligence, even if correct in the abstract, was not appropriate in this case. For this reason, if

not for others as well, it was error to give in charge section 3066 of the code.

5. Notwithstanding the errors above indicated, the reasonableness of the verdict in amount, in view of the character of the plaintiff's injuries, shows that these errors resulted in no harm to the defendant; and as the evidence was amply sufficient to authorize a recovery, there should be no new trial.

*Judgment affirmed.*

*Atkinson, J.*, concurring.—I concur in all the head-notes announced by the Chief Justice, except the 4th and 5th. There was not, in my opinion, any error in giving the charge referred to in the former. If there had been, a new trial ought to be granted.

*Lumpkin, J.*, dissenting.—I concur in all the head-notes announced by the Chief Justice, except the last. In my opinion, a new trial should be granted because of the errors mentioned in the 4th head-note, and I therefore dissent from the judgment of affirmance.

July 27, 1896.  Argued at the last term.

Action for damages.    Before Judge Milner.    Whitfield superior court.    April term, 1895.

The declaration made the following allegations: Waugh street, one of the public streets of Dalton, crosses the railroad nearly at right angles.    On the east side of the railroad and immediately north of the street is a large building, hiding from the view of those looking from the railroad track persons approaching the railroad from the east on said street, and at the side and west of and close to said building were standing cars, extending down close to the wagon way and still further obstructing the view northward up the railroad track, until persons so approaching the railroad are within a few feet of the track.    On July 10, 1893, he was approaching said railroad on this street cautiously from the east, sitting upon a load of wood on his wagon.    As soon as he reached a point from which he could look northward up the track, he did so, and seeing no train approaching and hearing no whistle or ringing of a bell, attempted to drive across the track.    As soon as his team got on the track, he saw defendant's passenger-train approaching around a curve from the north, at a speed of

25 miles per hour.   When he first saw or could have seen the train it was within two or three hundred feet of him. Before he could turn his team from the track or urge it across the track, or leap from his wagon, the engine struck the wagon, hurling it into the air and throwing him violently upon the ground beside the track.   His wagon was destroyed, to his damage $100; and he was knocked senseless and remained unconscious for ten hours; the bones of one of his hands were broken; his head was cut, gashed and bruised; the crest of one of his pelvic bones was broken off; his thighs, back and hips were greatly bruised and lacerated; his face and breast were cut and bruised in many places; and from these injuries his nervous system was greatly shocked, from which shock he has not yet recovered and fears he never will recover.   He suffered great mental and physical pain from the injuries for many weeks, still suffers such pain, and has reason to fear he never will be free from pain.   He has been wholly unable to walk since the occurrence, and fears he never will be able to walk as before.   He has been unable to do any labor, and will be unable for many months, and fears he never will be able to labor as before.   His injuries are permanent.   There are two other public crossings within 300 yards north of that at which he was injured.   Defendant's agents were negligent in running over both these at said high rate of speed, and in not sounding any whistle or ringing any bell as required by law and by the ordinances of the city.   They were negligent in running around said curve and approaching the Waugh street crossing at said high rate of speed, and in not blowing the whistle or ringing the bell or giving other signals of approach of the locomotive; and were grossly negligent in not checking and continuing to check the train as it approached the crossing.

On October 17, 1894, plaintiff obtained a verdict for $1,850.   Defendant's motion for a new trial was overruled,

and it excepted.    The motion alleged, among other grounds, that the court erred:

In admitting in evidence, over objection, the following testimony of Dr. Wood: "I remember very distinctly asking plaintiff, after we moved him to the boarding-house, some time in the afternoon not later than two o'clock, something, and he didn't know that he had been in my office at all.    He thought we had brought him from where he was injured to the boarding-house."    The objection was, that this was simply the sayings of plaintiff, some five hours after the occurrence, and too far off to be a part of the *res gestæ*.

In excluding from the jury a diagram of the place where plaintiff was injured, which had been prepared by Whorley, civil engineer, and was sworn to by him as being a correct representation of the surroundings; the court ruling that counsel might use it before the jury, but that it could not be sent out as evidence.

In charging: "You look to the evidence and see where on the line of railroad the injury occurred; was or was it not within the corporate limits of the city of Dalton?    What speed was the engine running after it reached the corporate limits of Dalton?    Was it or not a greater rate of speed than allowed by the law and the ordinances of the city of Dalton?    The ordinances of the city of Dalton are in evidence before you, and you will see by regarding that ordinance that it requires the engineer of a train to check the speed of the train down to four miles an hour.    A failure to comply with this ordinance of the city of Dalton would be negligence."    Alleged to be error, because not a proper way of submitting this question to the jury; because the ordinance might be reasonable as applied to one locality and unreasonable as applied to another; it might be reasonable as to populous parts of the city and not reasonable with reference to uninhabited districts near the corporate limits; and the jury should have been instructed as to the condi-

tions under which the ordinance should apply and those under which it would not, and left to say whether or not the ordinance was reasonable and applicable, according as they might find these conditions to exist or not. Error further, because it made defendant negligent for running faster than four miles an hour after its train reached the corporate limits of Dalton, regardless of the locality where the accident occurred. The evidence showed several public crossings within the corporate limits of Dalton had to be passed by defendant's train before the crossing was reached where the accident occurred, and that the corporate limits were a considerable distance from this place; and if the statute and city ordinances were violated in regard to the speed of the train before this crossing was reached, the law is this is a circumstance showing negligence at the time of the accident which may go to the jury, but not negligence *per se* as charged by the court.

In charging: "If the plaintiff was injured by negligence of defendant's agents in running its trains in violation of law, and if such negligence was wilful on the part of defendant or its agents, or was done in reckless disregard of the life or safety of people, then the plaintiff would be entitled to recover, and his recovery would not be lessened even though plaintiff might by ordinary care have avoided the consequence of defendant's negligence." Error, because there was no evidence to justify or authorize it, and the facts made it peculiarly inapplicable; and because the facts showed anything but a reckless disregard of human life by defendant's agents.

*Payne & Tye* and *R. J. & J. McCamy*, for plaintiff in error.

*Maddox & Starr* and *McCutchen & Shumate*, contra.