1. The evidence authorized the verdict. Accordingly, the general grounds of the motion for new trial and the first two of the special grounds, which are but an elaboration thereof, are without merit.
2. Special grounds 3 and 4, assigning error on the admission, over the defendant's objection, of evidence set forth in the statement of facts, as to the perpetration by the defendant of two holdups of other persons in the vicinity of the homicide and during the same night, in which a pistol was employed, are without merit under numerous decisions of this court. See Andrews v. State, 196 Ga. 84 (4) (26 S.E.2d 263); Fuller v. State, 197 Ga. 714 (30 S.E.2d 608); White
v. State, 177 Ga. 115 (3) (169 S.E. 499); Sisk v. State, 182 Ga. 448 (185 S.E. 777); Barkley v. State, 190 Ga. 641 (2) (10 S.E.2d 32).
(a) The court charged as follows: "This defendant is on trial for the *Page 121 
particular offense charged against him in this indictment; that is, he is on trial of the charge of murder as charged in this indictment; and he is not on trial on account of any other alleged offense or offenses; but where knowledge, motive, intent, good or bad faith, and other matters depend [ing] upon a person's state of mind are involved as a material element in a particular criminal offense for which the defendant is on trial, evidence as to offenses r acts other than the particular crime charged in the indictment is admissible when it tends to connect the accused with the crime charged, or tends to show his course of conduct, motive, intent, or common scheme or plan of offenses. Any evidence with reference to other alleged transactions of the defendant should be limited by the jury to the consideration of the state of the defendant's mind in reference to the subject involved in this case for which he is now on trial." This charge with respect to such evidence was not subject to the exception taken, either because it instructed the jury that they might consider any evidence which tended to show the defendant's course of conduct, motive, intention, or common scheme regardless of whether or not it bore any relation to the offense for which he was being tried, or because it tended to mislead and confuse the jury. See Manning v. State, 153 Ga. 184, 198 (3), 199 (111 S.E. 658); Palmer v. State, 195 Ga. 661 (6) (25 S.E.2d 295); Cooper v. State, 182 Ga. 42 (4), 52 (184 S.E. 716, 104 A.L.R. 1309); Dickerson v. State, 186 Ga. 557, 558 (199 S.E. 142); Brown v. State, 14 Ga. App. 505, 509 (81 S.E. 590).
3. In special ground 5 exception is taken, first, to the admission in evidence, over the defendant's objection, of his written confession, and, second, to its being sent out with the jury, it not being made to appear, however, that any objection was made at the trial with respect to the second assignment, and no reason being given which would have prevented the making of such an objection. Held:
(a) Under the authority of Lowe v. State, 125 Ga. 55 (3) (53 S.E. 1038), the first exception affords no ground for setting aside the verdict. See, in this connection. Smithwick v. State, 199 Ga. 292 (10), (34 S.E.2d 28), in which the Lowe case is cited; and also Western Atlantic R. Co. v. Stafford, 99 Ga. 187 (3) (25 S.E. 656), and Stallins v. Southern Railway Co., 140 Ga. 55
(2) (78 S.E. 421). Moreover, this first ground of exception is incomplete, in that it does not "set forth any objection to the evidence made at the time of its introduction." Sims
v. State, 195 Ga. 485 (7), 490 (25 S.E.2d 1); Norman
v. McMillan, 151 Ga. 363 (4) (107 S.E. 325); Clare v. Drexler, 152 Ga. 419 (5) (110 S.E. 176).
(b) As to the second exception, that this written confession was allowed to go out with the jury, just as in the Smithwick case, supra, it does not appear that any proper and timely objection was made to permitting the document to go out with the jury; and in the recent case of Weaver v. State, 199 Ga. 267 (5) (34 S.E.2d 163), it was held that, even in a case where the document sent out with the jury had not been offered in evidence, the exception must show that "neither the movant nor his attorneys knew, at the time or before the verdict was received, that said papers were handed to the jury." No valid exception being *Page 122 
made in the second exception, no ruling is made as to the actual propriety of allowing the confession to go out with the jury.
Judgment affirmed. All the Justices concur, except Wyatt, J., who dissents from the ruling in division 2, and from the judgment of affirmance, and Head, J., disqualified.
 No. 15275. OCTOBER 5, 1945. REHEARING DENIED NOVEMBER 19, 1945.
George McKay excepts to the overruling of his motion for new trial upon general and special grounds, after his conviction without a recommendation to mercy of the murder of Pete D. Verge (Vergiotis) by shooting him with a pistol. Elonzo Jones and Jesse Craiton were jointly indicted with McKay, but Jones had not been arrested and McKay was tried separately.
The evidence in this case is in part similar to that inCraiton v. State, 199 Ga. 829 (35 S.E.2d 510). The State offered in evidence the original confession of the defendant McKay, certain documentary evidence in the form of photographs of the retail liquor store where the deceased was working, the pocketbook of Private Albert Freumyer, the coat of the defendant, the shirt of the deceased, the tie clasp and watch of W. T. Patterson and Hulsey Talton, the pistol used in committing the crime, and other documentary evidence. R. H. Anderson, an officer of the City of Atlanta, testified: that on the last day of the year he was called to pick up three boys; that they were arrested at 258 1/2 Auburn Avenue between 6 and 6:30 o'clock in the morning, one of the boys being George McKay, the defendant on trial; that Anderson's partner, officer McGuire, arrested McKay and placed him in the patrol car, or radio car No. 13 of the City of Atlanta; that it was necessary for officer McGuire, after placing McKay in the patrol car, to come and assist Anderson with the arrest of George Johnson, who was scuffling with him on the sidewalk, all of which occurred between 6 and 6:30 on the morning of December 31, 1944. W. E. Haygood, testified for the State that he was manager and embalmer for J. Austin Dillon Company, that he assisted in the embalming of the deceased, and that the deceased died of a hemorrhage from a pistol wound inflicted on December 30, 1944. Officer J. M. Pack, of the City of Atlanta, testified: that on the night of December 30 1944, at about a quarter after 11, he and his partner, J. W. Ellington, were coming down Edgewood Avenue, *Page 123 
and, just this side of Boulevard, heard two shots which sounded like two gun shots; that they looked in the liquor store between Boulevard and Fitzgerald on Edgewood, and did not see anything wrong there; that they came on down by the Regal Liquor Store at 435 Edgewood Avenue, and saw Verge (the deceased) standing inside there behind the counter, but did not see anything wrong, and turned around and went back, and they did not see Verge then; that they stopped their automobile and went in and found him lying on the floor behind the counter and shot in the chest; also, that they found the telephone off the hook, and it looked as if he had been holding his gun; that they called the ambulance from Grady Hospital and Dr. Crenshaw examined the deceased and pronounced him dead. The witness stated that he did not see anyone running out of the store, as he was driving, but that his partner, Ellington, was sitting next to him on the front seat and was looking around while the car was turning around. The witness also identified the bullet that the doctor picked up from Verge, and gave it to officer Langley the next morning. The witness also identified exhibits offered by the State with reference to pictures of the liquor store; and identified the gun found lying on the counter in the liquor store as being the gun with two empty shells in it when found on the night of the killing; and also identified the gun supposedly belonging to McKay, the defendant. Dorris Austin testified for the State that he is a sergeant in the police department, assigned to the identification bureau, and he identified the bullet found on the body of the deceased as being the bullet fired from the Iver-Johnson pistol allegedly belonging to the defendant. Ida White testified for the State: that she lived at 258 1/2 Auburn Avenue, Atlanta, and on the morning of December 31, 1944, saw the defendant McKay; that he was at her home with Jesse James Craiton and George Johnson; that she saw a gun and it looked like the one exhibited at the trial; that McKay had the gun in his possession and unloaded it in her house; that when he opened the pistol an empty cartridge fell out, and he put the empty cartridge in his outside jacket, similar to the one he had on during the trial, and he reached in his pocket and put a good cartridge in the place where the empty cartridge had fallen out; that McKay and Johnson had some words while they were at her house, and Johnson said he was going to kill McKay *Page 124 
when he got him outside because he "run his damn tongue too much;" that she changed two $10 bills for them while they were at her house, and they divided the $20, splitting it three ways; that she called the officers, as she thought something was peculiar about the way they were acting; that they were acting like they were drinking but not drunk; that the defendant stated in her presence at the police station that he got the pistol off a drunk man on Decatur Street by following him through an alley; and that the defendant said that the pistol was the same pistol which he had at her house, and was the pistol that he placed between the seat and cushion in radio car No. 13, which was driven by Anderson and McGuire, the officers who arrested him. Dr. A. H. Crenshaw testified for the State: that he saw the deceased at 435 Edgewood Avenue, and he was then dead; and that the bullet marked State Exhibit A was the bullet which he gave to a plain-clothes man, and was the bullet which he got from the dead man, lying free on the front of his shirt. Fannie Mae Eubanks testified for the State: that the gun marked Exhibit K was the gun which she saw the defendant McKay have on Saturday, the night the deceased was killed in his place of business on Edgewood Avenue; that McKay left her house with the gun some time after 3 o'clock in the afternoon, and he came back that morning after he had "left out" with the gun; that "Horse Thief" (George Johnson) and Jesse James Craiton left with him; that she next saw the defendant that Sunday morning between 3 and 4 o'clock: that "Horse Thief" and Craiton came to her house with him; and that while they were there the three of them drank a quart of whisky. Farris Eubanks testified for the State that McKay, Craiton, and "Horse Thief" were at his house together early in the morning, and that he found a watch and tie clasp in his house and turned them over to the police. Officer Ellington testified for the State: that he and his partner Pack were patrolling on Edgewood Avenue the night the deceased was killed: that, while travelling along Edgewood Avenue near number 435, they heard two shots fired, and at that time were between the two liquor stores located on Edgewood Avenue; that the witness looked in the direction of the Regal Liquor Store, and saw a negro coming out of the store about three seconds after hearing the shots fired; that a car was parked between their car and the liquor store, and he saw a second negro with a quart of *Page 125 
whisky in his hand; and that the two shots were not fired at the same time. The witness also identified the defendant on trial as the negro he saw come out of the liquor store, and testified that this happened a little after 11 o'clock; that when they passed the store where Verge was working he was standing up at the counter with both hands on the counter, and they thought nothing was wrong with him; but that when they went back to the store they found him lying on the floor behind the counter; and that a nickel-plated pistol was lying on the counter. The witness also identified photographs offered by the State, marked Exhibit C, and the shirt offered in evidence as being the one that the deceased had on at the time of the killing. Officer McGuire testified for the State: that between 6:30 and 6:45 on the morning of December 31, 1944, he and his partner Anderson, were parked in front of 258 1/2 Auburn Avenue waiting for some negroes to come down stairs; that he arrested George McKay while his partner was arresting Jesse Craiton and "Horse Thief;" that he did not have a chance to search McKay at the time he arrested McKay, but placed him in the back of the automobiles, and went to help his partner with "Horse Thief;" that McKay was placed in the back seat of radio car No. 13 without being searched. Officer P. B. Greene testified for the State that he made an investigation of the fatal shooting of the deceased and searched car No. 13, driven by officers McGuire and Anderson, on the morning of December 31 at about 9:30, and found a revolver, which he identified and which was offered by the State as Exhibit K. He further testified: that he found this revolver between the seat and the back of the car directly behind the driver on the left-hand side; and that the defendant confessed in his presence, freely and voluntarily and without any inducement, referring to the crime, that "they done this." Officer J. H. Langley testified for the State that the defendant McKay made a statement freely and voluntarily that Lonnie Jones was the one who had the gun, and that Craiton was the one who went into the liquor store to purchase some whisky or under the pretense of purchasing some whisky, and that Jones came in second and McKay came in third, the defendant outlining in one of the photographs the positions in which they stood in the liquor store. The witness further testified: that he showed the defendant the pistol identified as State's Exhibit K, and the defendant said that *Page 126 
it was his, that he got it from the home of Farrell Eubanks, gave it to Lonnie Jones, and got it back after the shooting and pulled two more holdups with it; and that after he was arrested he pushed it down beside the car seat in the back section of the police car. W. T. Patterson testified for the State: that he was home on leave from the Navy, and that he and a "buddy" named Talton were walking up Grant Street when they were held up and robbed by a couple of colored guys, identifying the defendant, George McKay, as one of them; that he was robbed of approximately $8 and his "buddy" was robbed of a watch. He identified the gun offered as State's Exhibit K as the gun used in the holdup, and testified that he told the police department that the robbery happened around 2 o'clock a. m. Hulsey Talton testified for the State that he and the sailor who had just left the stand were robbed on the morning of December 31, 1944, and he identified one of the robbers as being present in the courtroom and the "third one back there," and identified the gun introduced by the solicitor as being the gun that was used on him. He testified that he was robbed of approximately $6 or $7, a pocketbook, a pair of gloves, a watch, a collar pin, a tie pin, a tie, and a package of chewing gum, and that the robbery occurred about 1 o'clock on the last day of last year. Albert Freumyer testified that he was robbed in the City of Atlanta on December 31, 1944, near the Greyhound bus terminal, of his pocketbook containing approximately $40, and he identified the defendant as being a participant in the robbery.
The defendant made a lengthy statement denying any connection with the robbery of the liquor store, but admitted being with the men when they went to rob that store. He stated that he was made to sign the confession and that the solicitor held his hand while he signed it.
Officer J. W. Langley and Calvin Cole, an investigator in the solicitor's office, testified in rebuttal that the defendant signed the statement of his free will and accord; that no one held his hand, and that his attorney read it before it was signed.