## 35053. GATES v. THE STATE.

HILL, Justice.

This is a death case. Defendant Johnny Lee Gates was convicted by jury of the rape, armed robbery, and murder of a young woman in Columbus. The jury found three statutory aggravating circumstances and imposed the death penalty. The trial court sentenced defendant to death for the crime of murder, and to 20 years consecutively for the crimes of armed robbery and rape.

There was evidence from which the jury was authorized to find the following: Prior to being assigned to Fort Benning, the victim's husband had been stationed in Germany where he met and married the 19-year-old victim. On November 30, 1976, the couple had been in the United States about a month and had been in their apartment in Columbus about ten days. The husband left for work at the fort about 6 a.m. on that date. Shortly after noon, the defendant knocked on the door of the apartment, posing as a gas employee. The victim allowed him to enter, apparently thinking he had been sent in response to her request that the gas heater be repaired.

Once inside, defendant was given a can of oil and shown to the heater in a closet. After beginning to oil a fan, defendant walked to the bathroom where the victim was and told her of his intent to rob her. He then raped her and forced her at gunpoint to give him $300 hidden under her mattress in the bedroom, and $180 hidden in a tape player in the living room. Before leaving, the defendant took the victim back into the bedroom, where he gagged her and blindfolded her with her husband's army ties and tied her hands behind her back with the belt to her bathrobe. He then shot her in her right temple, causing her death.

After his arrest on January 31, 1977, on unrelated crimes defendant was questioned by police concerning the above crimes of murder, armed robbery and rape. Defendant confessed to the crimes of murder and armed robbery, but stated that the victim had voluntarily engaged in sexual intercourse with him. Subsequently, the defendant's fingerprint was found on the heater. A neighbor of the victim identified the defendant as having

knocked on his door about noon on the date in question, saying he was from the gas company.

Defendant enumerates one error in the guilt/innocence phase of his trial and six errors in the sentencing phase, which alleged errors we will consider in connection with our death sentence review.

1. Defendant enumerates error in the guilt/innocence phase of his trial in the admission into evidence of his written and videotaped confessions on the grounds that they were not knowingly, intelligently and voluntarily made. Although this is the first videotaped confession to be considered by this court, the standards by which confessions are reviewed are well known. Miranda v. Arizona, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966); Code Ann. §§ 38-411, 38-417. (Regarding tape recorded confessions, see *Harris v. State,* 237 Ga. 718 (5) (230 SE2d 1) (1976)).

Accordingly, prior to submitting defendant's written and videotaped confessions to the jury in the instant case, the trial court conducted a Jackson v. Denno hearing. Jackson v. Denno, 378 U. S. 368 (84 SC 1774, 12 LE2d 908) (1964). Defendant's interrogators testified at the hearing that they explained his constitutional rights to him, listened to him read aloud the statement of rights and waiver of rights form which they had explained, further explained the pronunciation and meaning of the word "coercion" over which defendant had stumbled in reading, and witnessed defendant sign the waiver before hearing and writing out his subsequent confession.[1] The officers further testified that they were aware at the time that defendant was twenty-one years old and had completed the sixth grade in school.

One of the officers also testified that defendant

---

[1]The signed waiver itself reads: "I have read this statement of my rights and I understand what my rights are. I am willing to make a statement and answer questions. I do not want a lawyer at this time. I understand and know what I am doing. No promises or threats have been made to me and no pressure or coercion of any kind has been used against me."

voluntarily went with him to the then vacant apartment. A video tape recording was made which shows defendant again being advised of his rights and again waiving them. The video tape recording does not depict a literal re-enactment of the crimes. Instead, defendant showed where and stated how he had committed the crimes and where furniture had been located at the time.

The defendant testified at the Jackson-Denno hearing that he had asked for a lawyer prior to confessing, that he was told it would take several days and he didn't need one, and that thereafter he had been afraid to ask again. He further testified that the detectives told him that if he confessed they would make sure that his most severe punishment would not exceed a life sentence. Defendant also said that he had not understood at the time the significance of the waiver he had signed, even after reading it aloud, and that after he had signed it he thought he had no choice but to confess on video tape at the scene of the crime.[2] One of the officers was recalled and refuted the statements the defendant made as to him and the other officer.

At the close of the hearing, the trial court made a finding that any statements made by defendant including oral and written confessions ". . . were made freely and voluntarily. . . without the remotest fear of injury, without any promise or hope of benefit or reward, and after having his constitutional rights explained to him, that he had the right to remain silent, that anything he said could be used against him in a court of law, that he had the right to have an attorney to confer with and confer with an attorney prior to making any statement and during the making of the statement, and that if he could not afford an attorney that one would be furnished to him by the state free of charge, that he understood these constitutional rights that were explained to him and that he voluntarily, intelligently — and intelligently waived

_____

[2]The defendant makes no mention of the fact that at the beginning of the video tape recording he is shown wearing handcuffs. This fact will be considered further, later in this opinion.

them. He understood them and he waived them. . . "

The test for admissibility of custodial confessions was established in Miranda v. Arizona, supra, 384 U. S. at 479. The standard for determining the admissibility of confessions is the preponderance of the evidence. Lego v. Twomey, 404 U. S. 477 (92 SC 619, 30 LE2d 618) (1972); *High v. State,* 233 Ga. 153 (210 SE2d 673) (1974); *Hurt v. State,* 239 Ga. 665, 669 (238 SE2d 542) (1977).[3] To determine whether the state has proven that a confession was made voluntarily, the trial court must consider the totality of the circumstances. Clewis v. Texas, 386 U. S. 707 (87 SC 1338, 18 LE2d 423) (1967); *Pierce v. State,* 238 Ga. 126 (231 SE2d 744) (1977).

Defendant asserts that in deciding to admit the confessions the trial court failed to consider the age and educational level of defendant, that he failed to consider the fact that the police had prior knowledge of defendant's age and educational level, and that he failed to consider that those factors made it impossible for the defendant knowingly to understand the drastic impact a televised confession at the scene of the crime would have on a jury. The gist of this argument simply is that giving a videotaped confession at the scene of the murder was an unwise decision and hence was not an intelligent thing to do. The mere fact that the defendant was twenty-one years old with a sixth grade education does not lead to the conclusion that he was incapable of knowingly, voluntarily, and intelligently waiving his consitutional rights. See *Goodwin v. State,* 236 Ga. 339 (1) (223 SE2d 703) (1976); *Hurt v. State,* supra at 669; *Miller v. State,* 240 Ga. 110, 111 (239 SE2d 524) (1977).

Unless clearly erroneous, a trial court's findings as to

---

[3]Lego v. Twomey, supra, dealt with the admissibility of confessions, not the standard of proof required for conviction. Hence the court found In re Winship, 397 U. S. 358 (90 SC 1068, 25 LE2d 368) (1970), inapplicable. Similarly, Jackson v. Virginia, ——U. S.—— (99 SC 2781, 61 LE2d 560) (1979), which arose from Winship, is inapplicable insofar as the admissibility of confessions is concerned.

factual determinations and credibility relating to the admissibility of a confession will be upheld on appeal. United States v. Watson, 469 F2d 362, 365 (5th Cir. 1972); *Johnson v. State,* 233 Ga. 58 (209 SE2d 629) (1974); *High v. State,* supra; *Hurt v. State,* supra. Moreover, we find in this case that, after viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the defendant's confessions admissible by a preponderance of the evidence. The decision of the trial court was supported by the evidence in accordance with the standards expressed above. Beecher v. Alabama, 408 U. S 234 (92 SC 2282, 33 LE2d 317) (1972), cited by defendant, is a case involving gross coercion and does not apply to these facts. We find that the trial court did not err in finding the confessions to be admissible.

Defendant asserts that the admission of the video tape recording was harmful error in that it was unnecessary, served as an extra witness against him, and by its nature made a forceful impression on the minds of the jury, overshadowing all other evidence in the case. Defendant did not raise objections on these grounds at the trial. Nevertheless, this being a death case, we will address this argument on its merits, both as it relates to the admissibility of the video tape recording at the trial-in-chief and later as to its possible prejudicial effect on the jury during the sentencing phase of the trial.

The Court of Appeals has held that posed movies which are substantially different from the facts of a case, and which because of the differences might be prejudicial and misleading to a jury, should not be used at trial. *Eiland v. State,* 130 Ga. App. 428 (203 SE2d 619) (1973). However, in this case we view the video tape recording as a pictorial confession rather than a posed reenactment of the crimes. Viewed as such, the requirement that the reenactment not be substantially different from the facts of the case is lessened considerably. The videotaped confession in this case showed the defendant waiving his constitutional rights and then consisted of a walk-through of the scene of the crime, with the defendant pointing out the location of certain objects and stating where and how he committed the murder and armed robbery.

Defendant does not assert that the tape is inaccurate in its particulars, nor does he claim material alteration. See *Harris v. State,* 237 Ga. 718 (5) (230 SE2d 1) (1976). Other evidence corroborates the defendant's confessions as is required by law. Code Ann. § 38-420. The mere fact that there is other substantiating evidence does not preclude the admissibility of a confession freely given. Cumulative evidence is admissible where relevant and material. *Bryan v. State,* 206 Ga. 73 (2) (55 SE2d 574) (1949). Even though the defendant had signed a written confession, defendant's videotaped confession was relevant and material where the state was required to prove his guilt beyond a reasonable doubt.

In Hendricks v. Swenson, 456 F2d 503, 506, (8th Cir. 1972), the court approved the use of a videotaped confession, saying: ". . . [W]e suggest that a video tape is protection for the accused. If he is hesitant, uncertain, or faltering, such facts will appear. If he has been worn out by interrogation, physically abused, or in other respects is acting involuntarily, the tape will corroborate him in ways a typewritten statement would not. Instead of denying a defendant his rights, we believe it is a modern technique to protect a defendant's rights." We find no reversible error based on defendant's assertions that a videotaped confession is both unnecessary and by its nature makes a more forceful impression on the minds of the jury.

We do not find any error in the admission of defendant's written or videotaped confessions, a rational trier of fact could have found the defendant guilty of murder, armed robbery and rape beyond a reasonable doubt, and his convictions therefore will be affirmed.

2. *Sentence review.* Although defendant does not specifically allege that the videotaped confession contributed to the imposition of the death sentence, Code Ann. § 27-2537 requires this court to determine "whether the sentence of death was imposed under the influence of passion, prejudice, or any other arbitrary factor." We must determine whether the video tape recording could have so prejudiced the jury that they were influenced into sentencing the defendant to death. *Prevatte v. State,* 233 Ga. 929, 931 (214 SE2d 365) (1975); *Chenault v. State,* 234

Ga. 216, 224 (215 SE2d 223) (1975).

The defendant was shown on the video tape recording handcuffed at the scene of the crime confessing to the murder and armed robbery. Absent justifying circumstances, the defendant normally should not be seen by the jury handcuffed in the courtroom or courthouse. However, where one or more jurors by chance see the defendant in handcuffs outside the courtroom, it is not error to deny a motion for mistrial. *Morris v. State,* 228 Ga. 39 (18) (184 SE2d 82) (1971), cert. den. 405 U. S 1050. See also *Brand v. Wofford,* 230 Ga. 750, 752 (199 SE2d 231) (1973); *Starr v. State,* 209 Ga. 258 (5) (71 SE2d 654) (1952). At trial, the court has discretion in requiring a defendant to be handcuffed or shackled for security reasons. *Allen v. State,* 235 Ga. 709, 717 (221 SE2d 405) (1975). Similarly, it is the responsibility of the police to take security measures to assure the safe and secure confinement of a prisoner. See *Howington v. Wilson,* 213 Ga. 664 (100 SE2d 726) (1957). Here was a murder suspect being transported away from the jail where he was being held. It was natural for the police to have him handcuffed for security reasons, and the jury would not have been shocked to see it.

Moreover, the video tape recording shows the defendant as being nonaggressive and nonbelligerent. The part of the videotaped confession in which defendant was seen handcuffed was only a brief part of the tape and the tape was only a brief part of the trial. The jury had the opportunity to observe the defendant at trial. We find under the facts and circumstances of this case that the fact that the defendant was briefly shown in handcuffs on a video tape recording did not create passion, prejudice or other arbitrary factor such as would influence the jury to impose the penalty of death. We find further that the use of the videotaped confession given at the scene of the crime did not create such passion, prejudice or other arbitrary factor as is prohibited by the statute. In this later connection perhaps we should note that the victim's body had been removed and the apartment vacated.[4]

---

[4]At the request of a juror, the confession was

3. Defendant does assert that pretrial publicity and remarks of the prosecutor caused the jury to be influenced by passion and prejudice into recommending the sentence of death.

Specifically, defendant asserts that the jury pool was adversely affected by publicity surrounding another murder which took place six weeks prior to defendant's trial and the publicity surrounding his own trial. Additionally, he enumerates as highly prejudicial the sentencing argument of the prosecutor.

As to the jury pool, defendant was tried seven months after his arrest. Six weeks prior to his trial another murder occurred, causing much publicity. See *Brooks v. State,* 244 Ga. 574 (1) (1979). The weekend prior to the trial in the case before us, local radio, television and newsaper stories related that the trial judge might televise this trial. On the day of the trial a local radio station broadcast details about this defendant's previous convictions and news that the state would ask for the death sentence.

In light of the possibility of prejudice, the trial court granted extensive individual voir dire of prospective jurors outside the presence of the others. He granted each of defendant's motions to strike jurors for cause, leaving a panel of 50 prospective jurors. Some prospective jurors admitted to a vague knowledge of the crimes, but none could recall details and each specifically stated an ability to weigh the evidence impartially. Irvin v. Dowd, 366 U. S. 717, 723 (81 SC 1639, 7 LE2d 751) (1960). No prospective juror had reached a conclusion as to defendant's guilt. Murphy v. Florida, 421 U. S. 794 (95 SC 2031, 44 LE2d 589) (1974); *Allen v. State,* supra, 235 Ga. at 713.

The sixth amendment to the U. S. Constitution and

replayed to the jury in the presence of the judge and a video operator, without objection, after the guilt/innocence charge. In this connection see *Smithwick v. State,* 199 Ga. 292 (10) (34 SE2d 28) (1945); *McKay v. State,* 200 Ga. 120 (36 SE2d 55) (1945); *Person v. State,* 235 Ga. 814 (2) (221 SE2d 587) (1976); *Watkins v. State,* 237 Ga. 678, 680-682 (229 SE2d 465) (1976).

Code Ann. § 2-111 (Ga. Const. Art. I, Sec. I, Par. XI) require juror impartiality. We have reviewed the entire voir dire and the circumstances surrounding this case and find no prejudicial pretrial publicity which would outweigh the stated impartiality of the prospective jurors. See Murphy v. Florida, supra.

We find no merit in defendant's contention that the arguments of the prosecutor during the sentencing phase of the trial influenced the jury to impose the death sentence through passion and prejudice as those terms are used in the statute. The prosecutor may argue for the death penalty and offer plausible reasons for his position. *Chenault v. State,* supra, 234 Ga. at 224 (1975).

4. Defendant contends that the court erred in admitting into evidence over objection defendant's pleas of guilty to three unrelated crimes, committed after the crimes for which defendant was being tried. After being arrested and before this trial, defendant pled guilty to two counts of armed robbery and one count of voluntary manslaughter which he had committed within a month after this murder.

These three pleas were admitted during the sentencing trial. They were not introduced, however, to support a specific aggravating circumstance so as to authorize the death penalty. Cf. Code Ann. § 27-2534.1(b)(1). See *Stephens v. Hopper,* 241 Ga. 596 (4) (247 SE2d 92) (1978).

Defendant asserts that such "prior criminal convictions and pleas of guilty," as to crimes committed after the murder for which he was on trial, are not admissible under Code Ann. § 27-2503, the scheme of which he contends is to provide more severe punishment for incorrigibles than for those who have not yet had the opportunity to be rehabilitated by the penal system. Defendant misinterprets the law. The cited Code section provides a scheme for presenting defendant's history to the sentencing authority (the jury in death cases) so that it may make the proper decision as to punishment. At issue for sentencing purposes is the status of the defendant at the time of sentencing, not his status at the moment he committed the crimes for which he was tried. The court did not err in admitting these prior pleas in the sentencing phase. See *Clark v. State,* 146 Ga. App. 799,

800 (247 SE2d 489) (1978). On the one hand the defendant is allowed to introduce evidence in mitigation, and on the other hand the state is allowed to introduce prior pleas and convictions.

After reviewing the record, transcript and enumerations of error, we find that the defendant's sentence of death was not imposed under the influence of passion, prejudice or other arbitrary factor.

5. Defendant enumerates as error the failure of the trial court to instruct the jury that its sentencing decision must include a focus on the particular characteristics of this defendant. In support of his contention, defendant cites Gregg v. Georgia, 428 U. S. 153 (96 SC 2909, 49 LE2d 859) (1976); Jurek v. Texas, 428 U. S. 262 (96 SC 2950, 49 LE2d 929) (1976); Proffitt v. Florida, 428 U. S. 242 (96 SC 2960, 49 LE2d 913) (1976); Woodson v. North Carolina, 428 U. S. 280 (96 SC 2978, 49 LE2d 944) (1976); and Roberts v. Louisiana, 428 U. S. 325 (96 SC 3001, 49 LE2d 974) (1976).

The trial court instructed the jury to consider the facts and circumstances in mitigation and aggravation, explaining to them that mitigating circumstances are those which do not excuse the offense, but which in fairness and mercy may reduce the degree of moral culpability or blame. He further instructed them that they were free to recommend mercy even if they found aggravating circumstances to exist. These instructions allow the jury to examine the defendant's individual characteristics in deciding his fate. The jury was properly instructed as to what it was to consider in reaching its decision as to sentence. *Fleming v. State,* 240 Ga. 142 (7) (240 SE2d 37) (1977); *Hawes v. State,* 240 Ga. 327 (9) (240 SE2d 833) (1978); *Spivey v. State,* 241 Ga. 477 (2) (246 SE2d 288) (1978), cert. den.——U. S.——.

6. Defendant enumerates as two errors the failure of the trial court to instruct the jury that mitigating and aggravating circumstances should be weighed against each other and the failure of the court to give concrete examples of mitigating factors. In Florida, the jury and then the trial court weigh mitigating and aggravating circumstances prior to deciding a defendant's fate. See Proffitt v. Florida, supra, 428 U. S. at 248; Fla. Code §

921.1412 (b)(c). The Georgia statute, held to be constitutional by the U. S. Supreme Court in Gregg v. Georgia, supra, does not impose the additional requirement that the jury be instructed that mitigating circumstances are to be weighed against aggravating circumstances, but instead allows the jury to consider both, and to impose a life sentence even where there are aggravating circumstances. *Fleming v. State,* supra, *Hawes v. State,* supra, *Spivey v. State,* supra.

As for the fact that the trial court failed to give examples of mitigating circumstances, it is not required that specific mitigating circumstances be singled out by the court in giving its instructions to the jury. *Potts v. State,* 241 Ga. 67, 86 (243 SE2d 510) (1978), *Spivey v. State,* supra. To influence the jury by use of examples might limit their discretion to consider other matters in addition to the examples given. Defense counsel, in argument to the jury, can point out all the mitigating circumstances available and a nonspecific charge allows the jury to consider anything it deems worthy. We find no error in these enumerations.

7. Defendant enumerates as error the trial court's charge of the statutory aggravating circumstance that ". . . the offense of murder was outrageously or wantonly vile, horrible or inhuman in that it involved depravity of mind to the victim. . . [sic]"[5]

Defendant contends that the statutory aggravating circumstance from which this charge was taken is itself unconstitutionally vague and overbroad, and that this charge served to taint the entire sentencing phase of the trial. Code Ann. § 27-2534.1 (b) (7) has consistently been held to be constitutional. Gregg v. Georgia, supra, 428 U. S. at 201; *Harris v. State,* 237 Ga. 718, 732-733 (230 SE2d

---

[5]The charge is grammatically incorrect. Code Ann. § 27-2534.1 (b)(7) reads: "The offense of murder. . . was outrageously or wantonly vile, horrible or inhuman in that it involved torture, depravity of mind, or an aggravated battery to the victim." The torture and aggravated battery involve the victim; the depravity of mind is that of the murderer. *Harris v. State,* 237 Ga. 718, 732 (230 SE2d 1) (1976).

1) (1976), cert. den. 431 U. S. 933 (1977); *Johnson v. State,* 242 Ga. 649, 651 (250 SE2d 394) (1978); *Collins v. State,* 243 Ga. 291, 294 (253 SE2d 729) (1979).

However, in the case before us, after some deliberation the jury returned to the courtroom and requested clarification of the phrase "depravity of mind to the victim." The trial court read from Black's Law Dictionary and from Webster's International Dictionary and then explained that "depravity of mind to the victim" means ". . . that his actions were so vile, horrible, or inhuman that he created such a *state of mind in the victim* as defined by the word depravity." (Emphasis supplied.) Regarding "depravity," it is not the victim's state of mind which must concern the jury; it is the defendant's. This defendant's jury was not charged on the meaning of this aggravating circumstance as it was intended by the legislature and has been interpreted by this court. See Gregg v. Georgia, supra, 428 U. S. at 202 (note 54); *Harris v. State,* supra. However, for the reasons which appear below, it is unnecessary for us to decide whether the death penalty imposed in this case must be set aside on this ground.

8. The jury was instructed as to two other aggravating circumstances: "The offense of murder was committed while the offender was engaged in the commission of another capital felony, to wit: armed robbery" and "the offense of murder was committed while the offender was engaged in the commission of another capital felony, to wit: rape."

The evidence showed that the defendant took some $480 from the victim at gunpoint. A gynecologist testified that he found motile sperm in the victim's vagina and cervix, and lacerations indicating forced sexual intercourse. The defendant admitted having intercourse with the victim but claimed she consented. The defendant was found guilty of rape and armed robbery by the jury and they were authorized to do so beyond a reasonable doubt.

After being properly instructed as to the two aggravating circumstances now under consideration, the jury returned a verdict imposing the death penalty for "(1) Armed robbery. (2) Rape. (3) Outrageously or wantonly

vile, horrible or inhuman in that it involved depravity of mind to the victim. And we recommend the death penalty."

Although the jury did not write out that "the offense of murder was committed while the offender. . ."etc. (see Code Ann. § 27-2534.1 (c)), it did specify "(1) Armed robbery" and "(2) Rape" as aggravating circumstances upon which it imposed the death penalty. It was clear to the lawyers and the judge, as it is to us, that the jury was basing its death penalty verdict on the aggravating circumstances based on armed robbery and rape, because no objection was made to the form of the verdict. The intent of the jury being clear and there being evidence in support of those aggravating circumstances beyond a reasonable doubt, we affirm the death penalty on these two grounds. See *Potts v. State,* 241 Ga. 67, 87, supra.

Where two or more statutory aggravating circumstances are found by the jury, the failure of one circumstance does not so taint the proceedings as to invalidate the other aggravating circumstance found and the sentence of death based thereon. *Gregg v. State,* 233 Ga. 117, 127-128 (210 SE2d 659) (1974); Gregg v. Georgia, supra, 428 U. S. at 161-162. The jury in this case was authorized to and did impose the death sentence because the offense of murder was committed while the offender was engaged in the commission of two other capital felonies, (1) armed robbery and (2) rape. The verdict may be upheld for either or both of these circumstances. The erroneous application of the statutory aggravating circumstance of "depravity of mind to the victim" (see Division 7, above) does not invalidate the valid parts of the verdict of the jury.

9. We have already noted that the verdict of the jury was not imposed under the influence of passion, prejudice, or other arbitrary factor. We have examined defendant's enumerations of error and the sufficiency of the evidence to support his convictions and sentence. He confessed twice to the armed robbery and murder, and his confessions were admissible and corroborated by other evidence. He denied the rape, asserting that the victim voluntarily consented to sexual intercourse. However, there was sufficient medical evidence to authorize the

verdict of guilty of rape. The evidence supports both the verdict and two of the statutory aggravating circumstances beyond a reasonable doubt.

We have considered the cases appealed to this court since January 1, 1970, in which life or death sentences were imposed. Those similar cases listed in the appendix support the affirmance of the death penalty in this case. They show that the death penalty has been imposed where the murder was committed while the offender was engaged in the commission of another capital felony. After raping, robbing and binding the victim, in this case, the defendant put a bullet through her head. The sentence of death imposed upon Johnny Lee Gates is not excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant.

*Judgment affirmed as to the convictions and the sentence of death. All the Justices concur.*

ARGUED JULY 10, 1979 — DECIDED OCTOBER 24, 1979.

*Sprouse, Tucker & Ford, William L. Tucker,* for appellant.

*William J. Smith, District Attorney, Arthur K. Bolton, Attorney General,* for appellee.

APPENDIX.

*Moore v. State,* 233 Ga. 861 (213 SE2d 829) (1975); *Mitchell v. State,* 234 Ga. 160 (214 SE2d 900) (1975); *Jarrell v. State,* 234 Ga. 410 (216 SE2d 258) (1975); *Goodwin v. State,* 236 Ga. 339 (233 SE2d 703) (1976); *Dobbs v. State,* 236 Ga. 427 (224 SE2d 3) (1976); *Gibson v. State,* 236 Ga. 874 (226 SE2d 63) (1976); *Moore v. State,* 240 Ga. 807 (243 SE2d 1) (1978); *Potts v. State,* 241 Ga. 67 (243 SE2d 510) (1978); *Collins v. State,* 243 Ga. 291 (253 SE2d 729) (1979).

HILL, Justice, concurring.

Additionally, I would consider Sandstrom v. Montana, — U. S. — (99 SC 2450, 61 LE2d 39) (1979), even though it was not raised. See Code Ann. § 27-2537 (c)(2) and (i). In my view the presumptions given in charge bring

into question the validity of the armed robbery and rape convictions (the statutory aggravating circumstances) as well as the conviction for murder. Having considered Sandstrom v. Montana, supra, and the charge as a whole, I would affirm the conviction and sentence.