## 37552. GRIBBLE v. THE STATE.

SMITH, Justice.

Appellant was convicted of murder and sentenced to life imprisonment. In this appeal, he raises seven enumerations of error. We affirm.

Appellant resided in a house owned by his mother. His aunt, Ruby Chasteen Brock, shared the residence with him. The two did not get along well and had frequent arguments about various domestic matters. Appellant made numerous statements to a friend that he was going to kill his aunt.

On the night of July 10, 1980, appellant and his aunt had an argument. He picked up a gun, and while his aunt lay on the sofa, he shot her in the head.

Appellant testified that, after the shooting, he changed his bloody clothes, went to a nearby store and telephoned a friend named Phil for assistance.[1] Phil arrived a short time later. Appellant thought the victim was already dead because "she didn't move any more and there was blood all over the place." Phil tied a sheet around the victim's neck in order to stop blood from flowing. The two then carried the victim downstairs, and appellant pulled a car around to the back of the house. Phil placed the body in the trunk and left.

A friend testified that he went to appellant's home the next day, July 11, to borrow some money. Appellant told him that Ms. Brock "was gone" and "wouldn't be returning." He said "he had killed her" and pointed out the bullet hole in the sofa. According to the witness, "[appellant told me] he had shot her and that blood was gushing from her head; [that] it didn't kill her and [that] she had asked for a doctor; that she had got up off the sofa when he refused and went to the door. He said he caught her at the door and pushed her back, that there had been a struggle; and that Ruby bit him. He held his finger up and showed us, or showed me where she had bitten him. And he said that, 'I choked her to death,' and he made a motion like so (indicating)."[2]

According to appellant, Phil returned to appellant's residence on July 12.[3] Appellant planned to dispose of the body, and they drove the car to a wooded area. Appellant testified that, although Phil actually disposed of the body, he threw the trunk mat as far as he could away from the car. A quilt was placed with the body. Upon returning to the residence, the car was cleaned, and Phil left.

The police received a report from those who talked with appellant that someone had been shot. When the police arrived at the scene, they found a green Chevrolet that "had a strong odor about it." A substance which looked like blood had drained out of the vehicle and onto the pavement.

The police found appellant on a nearby street. He voluntarily accompanied them back to the residence. The police obtained keys to

---

[1] Phil's identity was never fully determined. The police detective testified that they tried to obtain more information about him, but appellant did not know Phil's last name, nor could his phone number be located.

[2] At trial, appellant admitted discussing his aunt's death with his friend, but he denied choking her. Rather, he indicated that after shooting her, he grabbed her by the shoulders and shook — "begging her to move."

[3] Appellant testified that Phil was inside the residence when appellant returned home from spending the night at a friend's house. (The friend was supposed to help appellant leave the state.) In his statement to the police, however, appellant said Phil came by while he was watching a movie on television.

the Chevrolet and opened the trunk.[4] It smelled like bleach. The spare tire and mat were missing, and a bloodstained cloth was inside. Appellant was given Miranda warnings and taken to the correctional center.

The police remained at the residence with several family relatives, including appellant's stepfather. When the discussion turned to a possible murder weapon, the stepfather showed police a hiding place above a closet from which a .22 caliber pistol was recovered.

A body (along with a trunk mat and quilt) was later found in the area where appellant had taken his aunt. According to a pathologist who testified at trial, the cause of death was "a gunshot wound to the head and asphyxia due to ligature strangulation."

1. Appellant contends that there was insufficient evidence to convince a rational trier of fact beyond a reasonable doubt that he was guilty of malice murder. He admits shooting the victim, but states he did not intend to kill her. Moreover, appellant argues, Phil bound the victim and placed the ligature around her neck. Finally, appellant asserts there is no evidence that the body recovered was in fact that of Mrs. Brock.

Appellant's contentions are without merit. "The jury had a right to believe that the body found was that of the person alleged to have been murdered, in view of the testimony . . ." *Wrisper v. State,* 193 Ga. 157, 161 (17 SE2d 714) (1941); *Lowe v. State,* 230 Ga. 134 (195 SE2d 919) (1973). The evidence clearly shows that appellant shot Mrs. Brock in the head, and the jury could have concluded that it was appellant rather than "Phil" who placed the ligature around her neck. Under the evidence adduced at trial, a rational trier of fact was clearly authorized to find beyond a reasonable doubt that appellant had committed the offense of murder. Jackson v. Virginia, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. In his second enumeration, appellant contends that the court erred in admitting into evidence the .22 caliber pistol. He argues the police had obtained it through an illegal search.

Even assuming that there was a police search and that the search was illegal (but see *Park v. State,* 154 Ga. App. 348 (268 SE2d 401) (1980)), any error in admitting the pistol was harmless beyond a reasonable doubt. Appellant admitted shooting the victim, and the kind of weapon used was not in dispute. The introduction of the pistol

---

[4] Appellant apparently had the car keys, the victim's driver's license, and her social security card in his possession when he was picked up. These items were found concealed in the back seat of the police car, where appellant had been sitting.

added nothing to the state's case. *Hunt v. State,* 233 Ga. 329 (211 SE2d 288) (1974); *Kirkland v. State,* 141 Ga. App. 664 (234 SE2d 133) (1977). See United States v. Hall, 587 F2d 177 (5th Cir. 1979).

3. Appellant contends that his statements to the police were improperly admitted because no hearing was held to determine their voluntariness and that, under a "totality of the circumstances" test, his confession was involuntary. We cannot agree.

A pretrial hearing was held to determine the voluntariness of appellant's statements. The trial court was clearly authorized to find that the state had shown the voluntariness of appellant's confession by a preponderance of the evidence. See *Pittman v. State,* 245 Ga. 453 (265 SE2d 592) (1980); *Pierce v. State,* 235 Ga. 237 (219 SE2d 158) (1975).

4. In his fourth enumeration of error, appellant asserts that one of the jurors was related to the victim within the sixth degree of consanguinity and should have been disqualified as a matter of law under Code Ann. § 59-716. Appellant presented two affidavits stating that the juror's great grandfather was also the victim's. The juror, however, averred that she was fair and impartial, and that "to the best of [her] knowledge no relationship exists between [her] and the murder victim. . . ." On this evidence, the trial judge denied appellant's motion for new trial. "[T]his court will not interfere with his decision . . . when there is any evidence to support his finding. [Cits.]" *Reece v. State,* 208 Ga. 690, 692 (69 SE2d 92) (1952).

5. During police interrogation, appellant stated that "he hated his mother, father, step-father and wished they were dead just like Ruby." Appellant contends that this statement should not have been admitted because it placed his character into issue. He also argues that the statement constitutes evidence of a prior threat against third parties, which the prosecutor had expressly agreed would not be introduced.

We cannot agree that the admission of the above statement constituted a violation of the prosecutor's pretrial agreement. The statement was not a threat in that it does not express any intention of actually harming third parties. Moreover, the statement was admissible to show appellant's bent of mind. See *Pittman v. State,* 245 Ga. 453, 457, supra.

6. The trial court charged the jury as follows: "Now, with all of these principles in mind and always remembering that the burden is on the State to prove the guilt of the Defendant beyond a reasonable doubt, I will now instruct you with regard to the specific charge against the Defendant, that of murder: A person commits murder when he unlawfully and with malice aforethought, either express or implied, causes the death of another human being. Express malice is

that deliberate intention unlawfully to take away the life of a fellow creature which is manifested by external circumstances capable of proof. Malice shall be implied where no considerable provocation appears and where all the circumstances of the killing show an abandoned and malignant heart. Now, malice is a state of mind and frequently must be proven indirectly. It is an element of the crime of murder with malice aforethought and therefore must be proven by the State beyond a reasonable doubt. Where the State proves all the circumstances of the killing and those circumstances show an abandoned and malignant heart, malice shall be implied unless there is evidence showing considerable provocation. Malice need not exist for any period of time, but may be formed in an instant and regretted in the next. Now, it will be noted that malice is an essential element of the offense of murder and the burden is on the State to show malice beyond a reasonable doubt. *I charge you that, when there is direct evidence to show an intentional killing by the Defendant, the law presumes a homicide to be malicious unless the contrary appears from the circumstances of alleviation, excuse, accident, or justification. It is incumbent upon the Defendant to make out such circumstances to the satisfaction of the Jury unless they appear from the evidence produced against him. If the State proves that the Defendant killed the person named in the indictment, in this County, by the use of a deadly weapon in a manner likely to produce death, then the killing is presumed to be intentional and malicious unless circumstances of alleviation, excuse, accident, or justification appear to your satisfaction from the evidence.* Whether the Defendant killed the deceased, and, if he did, such killing was intentional and malicious are matters for you to determine from all the facts and circumstances. Before you would be authorized to find the Defendant guilty of the offense of murder, you must find and believe beyond a reasonable doubt that the Defendant did, with malice aforethought, either express or implied, cause the death of Ruby Chasteen Brock." (Emphasis supplied.)

In his sixth enumeration, appellant asserts that the emphasized portion of the above charge is impermissibly burden shifting. We agree with this contention, and we therefore disapprove the use of such language. See *Hosch v. State,* 246 Ga. 417, 420 (271 SE2d 817) (1980).

This is not to say, however, that appellant's conviction must be reversed. This court has "recognized that 'a single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge.' Cupp v. Naughten, 414 U. S. 141, 146 (94 SC 396, 38 LE2d 368) (1973)." *Wells v. State,* 247 Ga. 792, 795 (279 SE2d 712) (1981). The charge in the instant case specifically

instructed the jury "that the burden is on the State to prove the guilt of the Defendant beyond a reasonable doubt," that "[w]hether the Defendant killed the deceased, and, if he did, such killing was intentional and malicious are matters for you to determine from all the facts and circumstances," and that "[b]efore you will be authorized to find the Defendant guilty of the offense of murder, you must find and believe beyond a reasonable doubt that the Defendant did, with malice aforethought, either express or implied, cause the death of Ruby Chasteen Brock." In view of these instructions and the massive evidence of malice, we can only conclude that any error in an isolated portion of the charge was harmless beyond all reasonable doubt. Chapman v. California, 386 U. S. 18 (87 SC 824, 17 LE2d 705) (1967); *Pulliam v. Balkcom,* 245 Ga. 99, 101 (263 SE2d 123) (1980).

7. Appellant also asserts that written transcripts of his incriminating statements were improperly given to the jury. He relies upon *Walker v. State,* 215 Ga. 128, 130 (109 SE2d 748) (1959) which held that "the confession of the defendant . . . should not have been allowed to go to the jury room, and that to do so was reversible error." See also *Royals v. State,* 208 Ga. 78 (65 SE2d 158) (1951).

We find no reversible error in the instant case. "Appellant's continuing objection against admission of this evidence did not reach the question of its going out with the jury. Here, the court properly permitted these exhibits to go to the jury room in the absence of a proper objection. *Smithwick v. State,* 199 Ga. 292 (34 SE2d 28) (1945); *McKay v. State,* 200 Ga. 120 (36 SE2d 55) (1945); *Chandler v. State,* 219 Ga. 105 (131 SE2d 762) (1963)." *Sanders v. State,* 246 Ga. 42, 43 (268 SE2d 628) (1980).

*Judgment affirmed. All the Justices concur, except Gregory, J., who concurs in the judgment only.*

DECIDED NOVEMBER 13, 1981 —
REHEARING DENIED DECEMBER 1, 1981.

*M. Gene Gouge,* for appellant.

*Stephen A. Williams, District Attorney, Arthur K. Bolton, Attorney General, Mary Beth Westmoreland, Assistant Attorney General,* for appellee.