## 30392. MITCHELL v. THE STATE.

HILL, Justice.

Melvin Jerome Mitchell was tried and convicted of armed robbery and two misdemeanor pistol counts. He was sentenced to twenty years for armed robbery and twelve months on the pistol convictions to run concurrently. He appeals.

At trial the state presented evidence that the manager of a restaurant arrived at work a little after 8:00 a.m. on February 28, 1975, with his wife and two-year-old child. A few minutes later the bread man arrived with the day's order. The defendant and Mike McAllister, an employee of the restaurant, came in with the bread man. McAllister told the manager that the defendant was looking for a job. McAllister referred to the defendant as a friend but later referred to him as his brother. The manager told them that he had no openings at the time. The two men said they would wait to ask the day cook if he knew of a job in the area. The bread man left and the manager went about his business until the defendant stuck a gun in his ribs while McAllister held a knife near his wife's face. The manager was forced to open the safe and he and his wife were told to lie on the floor. The two men took approximately $340 from the safe. There was a knock on the door, the day cook arrived and the defendant and McAllister left after threatening the manager's family if he reported the robbery.

The manager notified police and gave them McAllister's address. The defendant was located with McAllister at that address. McAllister was arrested. The defendant said his name was Larry Brown. His mother said that his name was Mitchell and that he and McAllister were her sons. The manager and his wife identified McAllister and the defendant at a lineup held later that day. They also identified the defendant in court. McAllister pled guilty and at the defendant's trial he testified that a man known only as "Larry" or "Pee Wee" was with him during the robbery, not the defendant. The defendant testified that he had been jogging on the morning of February 28 from 7:45 a.m. until 10:40 a.m. He also said that he had won the $140 which he had at the

time of his arrest in a gambling game in another county.

1. The defendant contends that the court erred in not granting his plea in abatement based on the ground that he was not provided counsel at the commitment hearing. The defendant testified at the hearing on the plea in abatement that he was given a commitment hearing two or three days after his arrest, that there was no testimony of any witness against him at the hearing, that he was asked how he pled and he answered "not guilty," and that he was bound over to the superior court. He testified that he did not request counsel at the commitment hearing but that he was not told he could have counsel appointed to represent him at that hearing. The state urges harmless error and waiver.

Under the facts as testified by the defendant, there is a question as to whether the defendant was denied a commitment hearing or whether he was afforded a commitment hearing but was denied counsel. Regarding the denial of a commitment hearing, see *State v. Middlebrooks,* 236 Ga. 52, (1976). Because the defendant's plea was based upon denial of counsel, we proceed upon that basis.

In *State v. Houston,* 234 Ga. 721 (218 SE2d 13) (1975), this court held that a commitment hearing is a critical stage of a criminal proceeding, and as such the defendant is entitled to counsel. When the defendant is not afforded legal representation, the burden is on the state to show beyond a reasonable doubt that the failure to provide counsel at the commitment hearing did not contribute to the verdict obtained. *State v. Hightower,* 236 Ga. 58 (1976).

Although it is awkward to apply the necessary considerations to a nonhearing, defendant urges that this be done.[1] According to defendant's testimony no witnesses were presented by the state at the commitment hearing and so no opportunity for cross examination arose in which counsel might have assisted. The trial record

---

[1]If we were to proceed on the basis that defendant was denied a commitment hearing he would be no better served. See *State v. Middlebrooks,* supra.

discloses no facts or leads which counsel could have discovered at the commitment hearing which could have been pursued to defendant's benefit. No witness whose testimony would have favored the accused testified at the commitment hearing but was unavailable at trial. The defendant made no statement at the commitment hearing except to plead not guilty.

The defendant urges that he was harmed by lack of counsel at his commitment hearing in that an attorney could have insisted that the state show probable cause by testimony and could have cross examined the witness or witnesses called by the state and would have been better prepared at trial. He does not suggest, however, that lack of preparation by counsel contributed to the verdict of guilty.

There is no reasonable possibility that the denial of counsel at the commitment hearing contributed to the conviction and we find that the state has shown beyond a reasonable doubt that the failure to provide counsel did not contribute to the verdict of guilty. *State v. Hightower,* supra.

The district attorney also contends that the defendant waived his right to counsel at the commitment hearing because he did not raise the issue until the day before trial.

The commitment hearing took place on March 2 or March 3, 1975. The defendant was bound over to the superior court. The grand jury indicted him on March 11. On March 14 he was appointed counsel. On April 4 he was arraigned in superior court. He declined to plead but requested trial by jury. Again on May 5 he appeared in court and announced ready for trial. The state's lead witness, the manager of the restaurant, who had later moved to Kansas City, Missouri, was present and the case was scheduled as the second case for trial. The plea in abatement was filed on May 6, prior to trial, but after two court appearances with counsel.

In order to show that the defendant at his commitment hearing waived his right to counsel, it would be necessary for the state to show that such waiver was made voluntarily, intentionally and knowingly. Johnson v. Zerbst, 304 U. S. 458, 464 (58 SC 1019, 82 LE 1461)

(1938); Schneckloth v. Bustamonte, 412 U. S. 218, 235—246 (93 SC 2041, 36 LE2d 854) (1973). The state has not shown that defendant knew (was advised) at his commitment hearing of his right to counsel.

In order to show that by not filing the plea in abatement until the day before trial defendant's counsel waived, without defendant's knowledge, the right to counsel at commitment hearing, it would be necessary to show "deliberate bypass" (Henry v. Mississippi, 379 U. S. 443, 450 (85 SC 564, 13 LE2d 408) (1964), or that counsel gave conscientious consideration to that course of action which was best for his client's cause (Winters v. Cook, 489 F2d 174 (5th CCA, 1973)). Although there is some indication of "bypass" which would authorize remand for further development of this issue, Henry v. Mississippi, supra, remand is not required in view of our finding of harmless error.

2. The defendant argues that the court erred in admitting evidence of the lineup because the lineup was impermissibly suggestive and because the defendant was not represented by counsel at the lineup.

The police detective who conducted the lineup testified that it consisted of seven black males, including the defendant and McAllister, of approximately the same age and general description. The defendant and McAllister were permitted to pick their position in the line. The detective testified that although he suggested to the defendant that he remove his jacket and cap since they fit the description of clothing worn by one of the robbers, he did not suggest to either the manager or his wife whom to identify.

The manager testified that he identified the defendant and McAllister out of the presence of any other witnesses, that no one suggested whom he should identify, and that he made an immediate identification. His wife's testimony was substantially the same as her husband's.

The defendant complains that the witnesses were told that the police had two suspects that they thought might have been involved in the robbery. Although such statements perhaps should be avoided, a witness called to view a lineup must suspect that police believe there is

some reason to have the witness view the lineup. The holding of the lineup is suggestive in and of itself, and the statement complained of here was no more suggestive than was the lineup itself. A lineup is not per se unconstitutional.

Moreover, the evil to be avoided is the likelihood of misidentification of an accused. Here the witnesses identified the defendant from the four strangers.

The teaching of Neil v. Biggers, 409 U. S. 188, 196-201 (93 SC 375, 34 LE2d 401) (1972), is that where the identification procedure is impermissibly suggestive, the in-court identification of the accused by a witness is inadmissible unless the totality of the circumstances shows that the identification was reliable even though the procedure was suggestive.

We find that the confrontation procedure utilized here was fair and impartial; i.e., it was not suggestive as to the identification of the defendant. Moreover, considering the totality of the circumstances we find no likelihood of misidentification.

The defendant also contends that the lineup evidence should not have been admitted since he did not have counsel present at the lineup. There is no constitutional right to counsel at a pre-indictment lineup. Kirby v. Illinois, 406 U. S. 682 (92 SC 1877, 32 LE2d 411) (1972); *Fields v. State,* 232 Ga. 723 (1) (208 SE2d 822) (1974); *Brand v. Wofford,* 230 Ga. 750 (1) (199 SE2d 231) (1973).

The defendant also contends that the court erred in sustaining the state's objection to a portion of the defendant's opening statement to the jury. The statement in question was, "the evidence is going to show that those young men were taken down to a lineup with . . . no attorney there present." He contends that each side has the right to outline in his opening statement any evidence which he believes will be proved at trial. As noted, there is no constitutional right to counsel at a pre-indictment lineup. Kirby v. Illinois, supra. Whether the defendant was represented by counsel at the lineup is not relevant to the issue before the jury—the guilt or innocence of the defendant of the offenses charged, including the identification of the defendant. It is not error in a criminal trial to prevent defense counsel from making

argumentative statements as to irrelevant matters. *Perry v. State,* 102 Ga. 365 (13) (30 SE 903) (1897). The court did not err in sustaining the state's objection to that part of the opening statement.

3. The trial judge sustained an objection by the district attorney to a defense question on cross examination of the manager of the restaurant. Although a defendant is entitled to a thorough and sifting cross examination of witnesses against him (Code Ann. § 38-1705), the scope of cross examination is largely within the discretion of the trial judge and will not be controlled by this court except for abuse of discretion. *Gravitt v. State,* 220 Ga. 781 (6) (141 SE2d 893) (1965). We find no abuse of discretion here.

The defendant also cites as error the trial judge's sustaining the district attorney's objection to a question asked of the arresting officer on cross examination. The detective was asked whether he was familiar with the constitutional right of a citizen to resist an unlawful arrest. Examination of law enforcement officers as to the Constitution is beyond the scope of proper cross examination.

A police detective testified that when he arrested and searched the defendant, he found $140 in the defendant's pocket. The defendant did not object to this testimony at the time it was given, but at the close of the state's evidence he moved for a mistrial on the ground that the money was not proved as coming from the robbery. There is no merit to this contention. A jury may consider as circumstantial evidence the amount of money found on the defendant shortly after a robbery, just as the jury could consider the fact that no money was found.

During cross examination of the defendant, he was asked whether he worked. He answered that he did not, and his attorney objected on the ground that it was irrelevant and immaterial. The objection was sustained. After the defendant admitted having $140 at the time of his arrest, he was asked "But you don't work, is that right?" The defendant answered "I gamble." No objection was made, presumably because the question and answer were considered relevant to the $140. After a number of other questions regarding the $140 won gambling, the

defendant moved for a mistrial on the ground that the state had put his character into issue by asking him if he worked. The court did not err in denying the motion for mistrial.

The defendant argues that the court erred in permitting the defendant's brother, on cross examination, to answer "I guess so" in response to a question posed by the district attorney. The defendant contends that a guess is not competent testimony. In the context in which the answer was given, the statement was intended to mean "yes, so far as I know" and the trial judge did not err in allowing the response.

The defendant also argues that the trial court erred in permitting the district attorney to ask the brother on cross examination whether, at the time he pled guilty, he told the judge that his brother, the defendant, was not involved in the crime. The defendant contends that this line of questioning gave the jury the impression that McAllister should have told the trial judge at his guilty plea hearing that this defendant was innocent, and that this cast suspicion on the witness' testimony and prejudiced the jury against the defendant. No case has been cited and none has been found which declares that impeachment of this type is not permissible.

4. The defendant moved for a directed verdict at the close of the evidence for the state. The motion was denied. In reviewing the overruling of a motion for a directed verdict the proper standard to be utilized by the appellate court is the "any evidence" test. *Bethay v. State,* 235 Ga. 371 (219 SE2d 743) (1975). Applying that standard to the evidence in this case, we find that the trial court did not err in overruling the motion for directed verdict.

*Judgment affirmed. All the Justices concur, except Ingram, J., who concurs in the judgment only and Gunter, J., who dissents.*

SUBMITTED OCTOBER 3, 1975 — DECIDED FEBRUARY 11, 1976.

*Jack Dorsey,* for appellant.
*Lewis R. Slaton, District Attorney, Carole E. Wall, Assistant District Attorney, Arthur K. Bolton, Attorney*

*General, John W. Dunsmore, Jr., Assistant Attorney General,* for appellee.