### 31480. PIERCE v. THE STATE.

UNDERCOFLER, Presiding Justice.

William J. Pierce, Jr. was tried and convicted for the murder of Helen Wilcox and received a life sentence. He appeals raising primarily the question of the voluntariness of his confession. We affirm.

1. On January 22, 1971, Sheriff Marcus Hall of Jeff Davis County received a phone call from Homer Wilcox reporting that his wife, Helen, was missing from their country grocery store. The sheriff himself had visited her in the store only an hour earlier, but a search of the immediate area failed to reveal any evidence of her whereabouts. Search parties were formed to comb the area on the following two Saturdays, but no clues were found.

The sheriff's suspicions were focused on the defendant on March 16, 1971, when he received a phone call from the sheriff in Baxley that he had a prisoner who wanted to talk to him. Sheriff Hall then drove to Baxley, read the defendant his rights and was told by the defendant that he knew something about his missing lady and that he would tell the sheriff about it later. The defendant was then taken from the Baxley jail by the sheriff of that county, Red Carter, and his deputy, Howard McCook, to Swainsboro for a hearing in an unrelated case.

On their return that same day, Sheriff Carter detoured to Hazlehurst and radioed to Sheriff Hall to meet him behind Golden's Hospital in the parking lot at eight o'clock. There in the police car, in the company of the two sheriffs from Appling County and an unidentified state trooper from Swainsboro, the defendant at this second

meeting, after being given his Miranda warnings, told Sheriff Hall he wanted to show him where the body could be found, and that he had killed her by shooting her. After about an hour to an hour and a half search, the group did locate her body, and the defendant was driven back to Swainsboro.

The next morning, Sheriff Hall drove to Swainsboro to interview the defendant for the third time. Sheriffs Carter and McCook, and GBI Agent Sapp were present in the defendant's cell. Sapp read him his Miranda rights and the defendant filled out a waiver form, including the crime of murder and the date it occurred, and signed it himself. He then narrated the course of events leading to the strangulation, rather than shooting, of Helen Wilcox arising from her resistance to leaving the grocery store with him after he robbed the store with a gun.

The fourth and final interview occurred a month later in the Baxley jail with only Sheriff Hall present. After he was read his rights, he told the sheriff where to find the victim's pocketbook and a Calvert bottle. The sheriff located these items as described by the defendant.

In his enumerations of error 1, 2, 3, 4 and 7, the defendant challenges the admissibility of his confession and statements because he was not allowed to show the totality of the circumstances surrounding his statements during the Jackson v. Denno hearing. Clewis v. Texas, 386 U. S. 707 (1967). On the basis that the confessions and their fruits were inadmissible, the defendant also contends that the court erred in failing to direct a verdict in his favor.

During the Jackson-Denno hearing, the sheriff testified to the facts set out above including the time, place, and persons present at the four interviews with the defendant, that the defendant was given his Miranda rights each time and was not promised any favor or reward, and that the defendant's statements were offered freely and voluntarily.

In order to inquire into the circumstances surrounding the second meeting in the parking lot, the defendant sought to call Sheriffs Carter and McCook to cross examine them on what occurred in the car during their trip, leading up to the defendant's statements to

Sheriff Hall. The state objected but the court was going to allow this inquiry until he discovered that Sheriff Carter, though under subpoena by the state, was not present in the courtroom. The defendant then attempted to call Deputy Sheriff McCook, who was present, but the state objected on the ground the circumstances prior to the statements were irrelevant. The court then refused to allow McCook to testify. The state also objected to Anita Blackburn's testimony, regarding the third meeting in Baxley when the defendant fully confessed, because Sheriff Hall stated that she was not present in the jail cell at the time of the confession, although she was at the jail itself.

The defendant himself was able to take the stand, but the court limited his testimony only to whether or not he received his Miranda warnings, which he denied.

Lieutenant Sapp, the GBI agent, was then called by the state in rebuttal to testify that he was present at the third meeting in Baxley in the defendant's cell when the defendant confessed and that the defendant himself filled out and signed a printed waiver form.

The trial court then ruled the confession and statements admissible,[1] the jury was returned, and the trial resumed. The defendant presented no witnesses and did not call any of the state's witnesses to testify to the circumstances surrounding the defendant's statements at any time during the trial despite the court's expressed position that these were matters of defense to be brought out during the trial of the case. The defendant made a long and rambling unsworn statement, but did not ever claim his statements were other than voluntary.

It is now axiomatic that the defendant has the right to a hearing outside the presence of the jury on the question of the voluntariness of any in-custody statements or confessions that he has made. Jackson v. Denno, 378 U. S. 368 (1964); *Schneider v. State,* 130 Ga.

---

[1] "The court rules that the foundation has been laid concerning Sheriff Hall's testimony concerning his having advised the defendant of his rights as regards that which he has testified to."

App. 3 (202 SE2d 238) (1973). At such a hearing, the state must prove voluntariness by a preponderance of the evidence (Lego v. Twomey, 404 U. S. 477 (1971); *High v. State,* 233 Ga. 153 (210 SE2d 673) (1974)), and in order to make this determination, the judge must consider the "totality of the circumstances" surrounding the statement (Clewis v. Texas, 386 U. S. 707, supra; *Pierce v. State,* 235 Ga. 237 (219 SE2d 158) (1975)). It is not merely an inquiry based solely on Miranda, although the presence of these warnings is significant in deciding the voluntariness question. The def ?ndant has the right *"to have a fair hearing and a reliable determination* on the issue of voluntariness, a determination uninfluenced by the truth or falsity of the confession. Rogers v. Richmond, [365 U. S. 534 (1969)]." Jackson v. Denno, supra, p. 377. (Emphasis supplied.) We do not find that a hearing in which the defendant is allowed to present testimony only on the Miranda warnings and not on the surrounding circumstances meets this standard. State v. Fortner, 266 S. C. 223 (222 SE2d 508) (1976).

We, therefore, by order returned the case to the trial court for a Jackson-Denno hearing to determine fully the voluntariness issue. At that hearing, Sheriffs Hall, Carter, and McCook, GBI Agent Sapp, Anita Blackburn's friend Lois Patrick and the defendant were present and testified concerning the circumstances surrounding his statements. The trial court found that all the statements were voluntarily made and were properly admitted at the trial. Therefore, enumerations of error 1, 2, 3, 4, and 7 have been cured and no longer have any validity.

After a careful review of the lengthy Jackson-Denno transcript, we also find no merit to defendant's supplemental enumeration of error that the trial court erred in holding that the statements were voluntary.

2. We note that this trial took place in 1972, but that the motion for new trial was not ruled on until May 6, 1976, merely because the transcript was not ready. The case was filed here on July 15, 1976, and set for argument at the earliest possible date in September, 1976. In our opinion, a four-year delay in preparing a 250 page transcript is inexcusable.

The defendant has only belatedly, in a supplemental

enumeration filed November 29, 1976, raised any complaint about the failure of the trial court to rule for so long on his motion for a new trial. We find no error, however, since the defendant has shown no prejudice. The one witness who could not be found and the two who had died in the meantime were not shown to have any knowledge which would have been more than merely cumulative of that actually presented.

3. We find no error in the judge's instructions to the jurors on the reasons for their sequestration especially since no objection was made at trial, or in the admission of the photographs of the decomposed body of the victim. The evidence supported the verdict and the trial court did not err in failing to direct a verdict of acquittal.

*Judgment affirmed. All the Justices concur.*

Argued September 15, 1976 — Decided January 4, 1977.

*Gibbs, Leaphart & Smith, T. Alvin Leaphart,* for appellant.

*Glenn Thomas, Jr., District Attorney, Arthur K. Bolton, Attorney General, John W. Dunsmore, Jr., Assistant Attorney General, Susan V. Boleyn,* for appellee.

