36066. EILAND v. THE STATE.

HILL, Justice.
Eiland appeals his conviction and life sentence for the murder of Roosevelt Torrence.

The evidence showed that on the evening of May 26, 1979, at about 8 or 8:15 p.m. Melvin Simmons, a friend and houseguest of the defendant, got into a fight with Anthony Carey outside a bar in Atlanta. Around 8:30 p.m. Melvin Simmons and the defendant

entered the bar. Simmons pointed out Roosevelt Torrence at the back of the room, apparently believing him to be Carey. The defendant went to Torrence and killed him with a single shot from a handgun.

Witness Lafayette Hackett testified that he saw a man he identified as the defendant shoot the victim, and saw him run, fall, get up with gun in hand, and heard him say "don't nobody move" before running out of the bar. In a statement given to police, Hackett had said he was not looking in the direction of the shooting when he heard the shot. Under cross examination he reaffirmed his testimony that he saw the shot fired.

Witness Worthy Ann Raines testified that she was outside the bar when she heard a shot and saw two men run out of the bar. One of them she did not know; the other she recognized as Terry Eiland, the defendant, whom she knew.

The jury was further authorized to find that after the defendant ran from the bar, he remained in hiding in Seminole County, Georgia, approximately 240 miles southwest of Atlanta, until he was arrested and returned to Atlanta a month later, though he knew that a warrant for his arrest for murder had been issued the night of the shooting.

1. Mrs. Dorothy Bowens testified that she did not see the shot fired but that she saw a man she identified as the defendant carrying a gun as he ran from the back of the lounge. She described the gunman to police as being "short, about 5 feet, 7 inches."

The defendant asserts that the trial court erred in refusing to exclude the identification testimony of Mrs. Bowens on grounds that she had been exposed to an unnecessarily suggestive photographic display and was tainted by having seen the defendant appear before the committing officer at his preliminary hearing.

Mrs. Bowens was shown seven "mug shots." She said the officer told her: "Take all the time you need, we want to be sure we've got the man in jail for murder, we want to be sure we've got the right one." She identified the defendant's photo. The defendant contends the photographic display was unnecessarily suggestive because it contained numbers such as "509 — 142" indicating the height (5'9") and weight (142 lbs.) of each person photographed and that the officer's statement was suggestive that the perpetrator's photo was included among those being displayed. Conducting a photographic display is itself suggestive that the officer believes the perpetrator's photo may be among those being displayed. See *Mitchell v. State*, 236 Ga. 251, 254-255 (223 SE2d 650) (1976). We find that the officer's statement merely expressed what his showing the photos to the witness implied, urged the witness to exercise caution in her

identification, and did not render the identification inadmissible.

Although the defendant was shown to be 5′ 5″ and 127 pounds and the smallest other person depicted was "509 — 142", the photos were typical head and chest "mug shots" and the testimony did not show the witness understood the meaning of the numbers used to show height and weight or that she based her identification thereon. She testified at trial that she "was looking dead in his face" when he came by her. The bar was not dark and, due to having taken some medication, Mrs. Bowens had not been drinking. Under extensive cross examination, Mrs. Bowens maintained confidence in the accuracy of her identification. Considering the totality of the circumstances, the trial court did not err in admitting Mrs. Bowens' identification testimony. Neil v. Biggers, 409 U. S. 188 (93 SC 375, 34 LE2d 401) (1972); *Heyward v. State,* 236 Ga. 526 (224 SE2d 383) (1976).

2. The defendant urges that the trial court violated his sixth amendment right to counsel in refusing to exclude Mrs. Bowens' identification testimony because she saw him at his preliminary hearing where he was not represented by counsel.

The defendant's preliminary hearing was originally scheduled for June 26, 1979, but was postponed until July 3 to allow defendant's family to retain a noted death penalty lawyer as private counsel. On July 3, 1979, the defendant had not yet been able to retain that lawyer as his counsel. The state objected to a further continuance after noting that the state's witnesses had been assembled and the defendant had been informed of the date on which the rescheduled preliminary hearing would be held and had been told that a public defender would be assigned to his case if he desired. The defendant stated he did not want a public defender. The judge then proceeded with the hearing but afforded the defendant the right to cross examine the witnesses for the state though he did not do so. At the preliminary hearing, Milton (Melvin) Simmons, who was then charged as a co-defendant, testified that after he was beaten, he returned to the bar with the defendant and that he pointed out a man that looked like his assailant, but that he left the bar before he heard the shot. Next Mrs. Bowens identified the defendant as the man with the gun who ran past her after she heard the shot. Later, counsel was appointed for the defendant after private counsel refused the case.

On appeal, the defendant contends that the denial of counsel at the preliminary hearing denied him the right of counsel at a critical stage in the criminal proceeding. He cites Moore v. Illinois, 434 U. S. 220 (98 SC 458, 54 LE2d 424) (1977). In Moore v. Illinois, the rape victim saw her assailant for only 10 to 15 seconds before her face was

covered. She gave police a notebook (containing a letter) left by her attacker and said she thought she had seen him at a bar the night before. She was shown 200 photos from which she picked about 30 as resembling the defendant. She next picked 2 or 3 photos from a group of 10; one of these was the defendant. After the defendant was arrested, a policeman accompanied the victim to the preliminary hearing, telling her en route that she was going to view a suspect and should identify him if she could. At the courthouse, he had her sign a complaint naming the defendant as her assailant. The defendant was called by name before the bench and was charged with rape. The victim was then called from the courtroom to the bench. The prosecutor stated that evidence had been found which linked the defendant to the crime. The victim then identified the defendant in the courtroom. The defendant was not represented by counsel and the court did not offer to appoint counsel. At trial, after the defendant's motion to suppress the victim's identification testimony was overruled, the victim identified the defendant on direct examination as the man she had identified at the preliminary hearing and as her attacker. The letter was also used as linking the defendant with the crime. The U. S. Supreme Court held that the defendant's right to counsel was violated by the corporeal identification of the defendant at his uncounseled preliminary hearing and remanded the case for determination of whether the failure to suppress the identification testimony was harmless error.

There are certain similarities and certain differences between Moore v. Illinois, supra, and the case at bar. In Moore, the defendant was not represented by counsel or offered the appointment of counsel. Here the defendant was not represented by counsel but he had been afforded a continuance to obtain counsel and was offered appointed counsel which he rejected. In Moore, the victim identified the defendant's photo along with one or two more, without making a positive identification. Here the witness positively identified the defendant's photograph. In Moore, the policeman who had the victim sign the complaint and the prosecutor who stated that there was evidence linking the defendant to the crime thereby suggested to the victim that the defendant was her assailant. Here, the defendant's co-defendant testified at the preliminary hearing before the witness in question identified him.

We find that Moore v. Illinois is not entirely applicable here because this defendant was offered counsel which he rejected. Instead, the critical question is whether there was an adequate waiver of counsel. After being afforded a continuance to obtain counsel a defendant cannot reject appointed counsel and insist that his preliminary hearing be further delayed while he tries to obtain

the services of one particular, prominent attorney who has not agreed to take the case. However, in the case before us, the defendant's waiver of counsel consisted solely of his declaration that he did not want the public defender; he was not advised as to the consequences of his rejection of counsel, see Coleman v. Alabama, 399 U. S. 1, 9 (90 SC 1999, 26 LE2d 387) (1970), and hence his waiver was not shown to be knowing, voluntary and intelligent. *Mitchell v. State,* 236 Ga. 251, 253, 254 (223 SE2d 650) (1976).

However, we find that the failure to suppress Mrs. Bowens' testimony on the basis of the uncounseled preliminary hearing was harmless error beyond a reasonable doubt. At trial the defendant admitted being at the bar and admitted running out after the shot was fired. He denied having shot the deceased and denied having a gun. Mrs. Bowens repeatedly said she did not see the shooting, only the defendant running with the gun in his hand. Thus the only material difference between the defendant's version of events and Mrs. Bowens' version was whether he had a gun in his hand when he ran out. In view of witness Hackett's testimony that he saw the defendant shoot the victim (albeit inconsistent with his earlier statement), and saw him run, fall and get up with the gun in his hand, plus the defendant's flight, we find the admission of Mrs. Bowens' testimony to be harmless beyond a reasonable doubt. Chapman v. California, 386 U. S. 18 (87 SC 824, 17 LE2d 705) (1967).

Defendant's enumerations of error 2, 3 and 4 show no grounds for reversal.

3. The defendant contends that the trial court erred in denying his motion for mistrial when a detective called by the state testified on cross examination by defendant's counsel that he had received information that the defendant had shaved his head and planned to kill all the witnesses to the incident.

The detective was asked on cross examination if, when he went looking for the defendant, the detective said that he would shoot the defendant on sight. The detective asked if he could explain his answer. Defense counsel indicated that he could after saying "yes or no" to the question. The detective then stated "No, I didn't make a statement I would shoot him on sight." Defense counsel asked for the witness' explanation of his answer. The witness said "I received information that Terry Eiland had shaved his hair off his head, shaved his hair off his face, that he was going to kill all the witnesses involved in this incident." At this point, defense counsel injected his motion for mistrial, pointing out that the witness was a trained homicide officer who knew better. The court overruled the motion because the question was asked by defense counsel, but the court stated that he would not permit the witness to finish his explanation

unless defense counsel wished to pursue the matter. Defense counsel elected not to pursue it.

The objectionable answer was elicited by the defendant rather than the state. "Where counsel elicits testimony unfavorable to his client, he will not be heard to object to it, no matter how prejudicial it may be, if it is a direct and pertinent response to the question propounded." *Rozier v. State,* 126 Ga. App. 336(1) (190 SE2d 627) (1972); *Powers v. State,* 150 Ga. App. 25 (256 SE2d 637) (1979). Although the responsiveness of the answer is not immediately apparent, the answer was not completed and because defense counsel chose not to pursue the questioning, we cannot determine whether the answer was responsive or unresponsive. We do not find error in the overruling of the motion for mistrial under the circumstances of this case.

4. The defendant contends that the trial court erred in refusing to charge that neither presence nor flight, nor both taken together without more, is conclusive of guilt. Though the court did not charge in the language requested by the defendant, the court charged on "mere presence," "flight," identification of the defendant, and on the state's burden of proof beyond a reasonable doubt. We find that the court substantially gave the charge requested and thus this enumeration shows no ground for reversal.

5. A review of the evidence adduced at the trial of this case in the light most favorable to the verdict shows that a rational trier of fact could have found defendant guilty of murder beyond a reasonable doubt. Jackson v. Virginia, 443 U. S. 307 (99 SC 2781, 61 LE 2d 560) (1979). The trial court did not err in overruling defendant's motion for new trial.

*Judgment affirmed. All the Justices concur.*

SUBMITTED MARCH 21, 1980 — DECIDED JULY 1, 1980.

*Thurbert E. Baker, Philip Louis Ruppert, Waymon Sims,* for appellant.

*Lewis R. Slaton, District Attorney, Margaret V. Lines, Assistant District Attorney, Arthur K. Bolton, Attorney General,* for appellee.