A90A2293. METHENY v. THE STATE.
(400 SE2d 25)

DEEN, Presiding Judge.

After a jury trial, Robert Lee Metheny was convicted of the offense of habitual violator for operating a motor vehicle after having received notice that his driver's license had been revoked pursuant to OCGA § 40-5-58. He appeals from the judgment entered on the conviction. *Held*:

1. Metheny contends that after a hearing pursuant to *Jackson v. Denno*, 378 U. S. 368 (84 SC 1774, 12 LE2d 908) (1964), the trial court erred by failing to exclude statements, admitted in the prosecution's case-in-chief, that he made to police officers before he was given warnings pursuant to *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966). The record at the *Jackson-Denno* hearing shows

that, while on routine patrol at night, a Gwinnett County police officer observed a pickup truck off the road and stuck in the mud at the bottom of a ten-foot embankment. The vehicle was facing up the embankment with the lights on, the motor running and the wheels spinning. The driver's door was open. The officer observed Metheny sitting behind the wheel of the truck attempting to move the vehicle. After calling for assistance, the officer walked down the embankment to investigate the situation. He asked Metheny to step out of the vehicle and tell him what had happened. Metheny said another vehicle had run off the road, and while helping the other vehicle, his vehicle became stuck. When asked where the other vehicle was located, Metheny responded that it had left the scene. The officer asked Metheny to walk over to his patrol car, where a second officer had arrived in response to the call for assistance. At that point the first officer briefed the arriving officer on his findings and told him that, because there was no sign of another vehicle, he suspected the truck had accidentally run off the road, and also that Metheny appeared to have been drinking. Then pursuant to department custom, the ranking officer, who arrived first on the scene, turned the investigation over to the junior officer. The junior officer, who also observed signs that appellant had consumed alcohol, again asked Metheny what happened, and appellant gave the same explanation previously given. The officer then asked Metheny to produce his driver's license and proof of insurance. After appellant could produce neither, the officer ran a computer check from his patrol car and discovered that Metheny's license had been revoked. He then informed appellant that he was placing him under arrest for the offense of habitual violator. Metheny responded that the officer "didn't have anything on him; that he wasn't driving." The officer said, "You just told me you pulled up to help someone out of the ditch." And Metheny replied, "No, I wasn't driving."

It is undisputed that Metheny was not advised of his *Miranda* rights. Appellant objected to the admission of all statements made by appellant to the officers at the scene of the investigation and arrest. On these facts the trial court ruled that all of the statements were voluntary and admissible because: (1) they occurred in a non-custodial investigation prior to arrest to which *Miranda* has no application, and (2) the statements made after arrest were spontaneous and not in response to any police questioning. At trial, witnesses for the state testified as to the statements as part of the state's case-in-chief.

Our review of the trial court's ruling requires that we analyze four interrelated issues: (a) whether the statements were made while appellant was in police custody; (b) whether the statements were inadmissible in the state's case-in-chief because of the failure to give *Miranda* warnings; (c) whether the statements were voluntary under

traditional due process analysis; (d) if the statements should have been excluded, whether their admission could constitute harmless error.

(a) Only in-custody statements by the accused give rise to the issues of voluntariness and the *Miranda* warnings. "The test for determining whether a person is 'in custody' at a traffic stop is if a reasonable person in the suspect's position would have thought the detention would not be temporary." *Hughes v. State*, 259 Ga. 227, 228 (378 SE2d 853) (1989); *Berkemer v. McCarty*, 468 U. S. 420, 442 (104 SC 3138, 82 LE2d 317) (1984). Police officers at the scene of a traffic stop may conduct a general on-the-scene investigation, which may even require that persons be temporarily detained, without such being classified as custodial interrogation. *Mason v. State*, 177 Ga. App. 184, 185 (338 SE2d 706) (1985); *Webb v. State*, 179 Ga. App. 101, 102-103 (345 SE2d 648) (1986). Nothing the officers did prior to placing Metheny under arrest would have reasonably communicated to him that he was in custody. Testimony by the officers that Metheny would not have been allowed to leave the scene did not establish he was in custody, especially since this decision was never communicated to Metheny, and therefore could have no bearing on appellant's perception under the *Berkemer* rule. *Mason v. State*, supra at 184-185. There was ample evidence to support the trial court's determination that appellant was not in custody until he was formally arrested. Since the trial court's factual determination was not clearly erroneous we must accept it. *State v. Louis*, 185 Ga. App. 529, 530 (364 SE2d 896) (1988). Having determined that Metheny was not in custody until his actual arrest, the remaining issues are addressed only to the statements he made to the police after he was informed of his arrest.

(b) It is undisputed that Metheny was not given the *Miranda* warnings prior to the in-custody statements at issue. The prosecution is barred from using any statements in its case-in-chief, whether exculpatory or inculpatory, obtained from a suspect during custodial interrogation, unless it first demonstrates that the suspect was afforded the procedural safeguards against self-incrimination known as the *Miranda* warnings. *Miranda v. Arizona*, supra at 384 U. S. 444. We have no difficulty with the first statement in which Metheny responded to being placed under arrest by stating that the officer "didn't have anything on him; that he wasn't driving." Since this statement was not given in response to a question posed by police, it does not come within the definition of custodial interrogation in *Miranda*, and therefore it was admissible. *Miranda v. Arizona*, supra at 384 U. S. 444-445, 478; *Delay v. State*, 258 Ga. 229, 231 (367 SE2d 806) (1988). With respect to the second statement, we find that the officer's comment directed to Metheny, "You just told me you pulled up to help someone out of the ditch," was the functional equivalent of express

questioning, which he "should know . . . [was] reasonably likely to elicit an incriminating response." *Rhode Island v. Innis*, 446 U. S. 291, 300-301 (100 SC 1682, 64 LE2d 297) (1980); Compare *Zubiadul v. State*, 193 Ga. App. 235, 237 (387 SE2d 431) (1989); *Davis v. State*, 191 Ga. App. 566, 568 (382 SE2d 396) (1989); *Lowe v. State*, 179 Ga. App. 377, 379 (346 SE2d 845) (1986); *Williams v. State*, 178 Ga. App. 581, 590-591 (344 SE2d 247) (1986) (illustrating factual circumstances falling short of custodial interrogation). In fact, the officer's comment did elicit the response, "No, I wasn't driving." For purposes of *Miranda* analysis, it makes no difference that the thrust of the statement itself was exculpatory since the state seeks to benefit from the incriminating impact on the defendant's credibility by contrasting this statement with other conflicting statements. The trial court committed clear error by failing to exclude this statement from the state's case-in-chief under the principles enunciated in *Miranda*.

(c) We next address the issue of whether the in-custody statement admitted in violation of *Miranda* was, nevertheless, voluntary under traditional due process standards. Statements obtained in violation of the procedural requirements of *Miranda* may be found otherwise voluntary under due process standards. *Green v. State*, 154 Ga. App. 295, 297-298 (267 SE2d 898) (1980); see *Platt v. State*, 163 Ga. App. 776 (296 SE2d 113) (1982). At a *Jackson-Denno* hearing the due process clause requires that "the state must prove voluntariness by a preponderance of the evidence [cits.], and in order to make this determination, the judge must consider the 'totality of the circumstances' surrounding the statement. [Cits.] It is not merely an inquiry based solely on *Miranda*, although the presence of these warnings is significant in deciding the voluntariness question." *Pierce v. State*, 238 Ga. 126, 129 (231 SE2d 744) (1977). "Prior to *Miranda* the admissibility of an accused's in-custody statements was judged solely by whether they were 'voluntary' within the meaning of the Due Process Clause. [Cits.] If a suspect's statements had been obtained by 'techniques and methods offensive to due process' [cits.], or under circumstances in which the suspect clearly had no opportunity to exercise 'a free and unconstrained will' [cits.], the statements would not be admitted." *Oregon v. Elstad*, 470 U. S. 298, 304 (105 SC 1285, 84 LE2d 222) (1985); see *Jackson v. Denno*, supra. "Indeed, even after holding that the Fifth Amendment privilege against compulsory self-incrimination applies in the context of custodial interrogation, [cit.] and is binding on the States, [cit.] the Court has continued to measure confessions against the requirements of due process." *Miller v. Fenton*, 474 U. S. 104, 110 (106 SC 445, 88 LE2d 405) (1985). "The failure of police to administer *Miranda* warnings does not mean that the statements received have actually been coerced, but only that courts will presume the privilege against compulsory self-incrimination has not been intel-

ligently exercised." *Oregon v. Elstad*, supra at 470 U. S. 310. In serving the Fifth Amendment right against self-incrimination, *Miranda* creates a presumption, irrebuttable for purposes of the state's case-in-chief, that the statement was obtained in violation of the Fifth Amendment and should be excluded. However, the important distinction here is that the *Miranda* presumption does not necessarily constitute a finding that the statement was coerced. *Oregon v. Elstad*, supra at 470 U. S. 306-307, n. 1.; *Procunier v. Atchley*, 400 U. S. 446, 453-454 (91 SC 485, 27 LE2d 524) (1971). In *Colorado v. Connelly*, 479 U. S. 157, 167 (107 SC 515, 93 LE2d 473) (1986), the court held that, "coercive police activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause of the Fourteenth Amendment." Statements obtained by the use of such coercive tactics are inherently offensive to a civilized system of justice and may not be admitted for any purpose at trial. *Mincey v. Arizona*, 437 U. S. 385, 398, 402 (98 SC 2408, 57 LE2d 290) (1978); *New Jersey v. Portash*, 440 U. S. 450 (99 SC 1292, 59 LE2d 501) (1979). The circumstances of the investigation and arrest in this case reveal none of the extreme tactics identified as the hallmarks of coercive police activity offensive to fundamental notions of due process. See *Oregon v. Elstad*, supra at 470 U. S. 312-313, n. 3. There was no lengthy interrogation, threats of physical violence, promises or other deliberate tactics calculated to break the will of the suspect. At the *Jackson-Denno* hearing, the trial court's determination based on the totality of the circumstances that the statements at issue were voluntary will not be disturbed on appeal unless clearly erroneous. *Kincey v. State*, 191 Ga. App. 300, 301 (381 SE2d 439) (1989); *Lindsey v. State*, 196 Ga. App. 67 (395 SE2d 328) (1990). We find no clear error in the trial court's ruling.

(d) Lastly, we must determine whether it was harmless error to admit the statement obtained in violation of *Miranda*, but, nevertheless, voluntary under due process standards. In *Chapman v. California*, 386 U. S. 18 (87 SC 824, 17 LE2d 705) (1967), the court recognized that error of even constitutional magnitude may be harmless if, considering the entire record on appeal, the reviewing court finds beyond a reasonable doubt that the error did not contribute to the verdict. See *Rose v. Clark*, 478 U. S. 570, 576 (106 SC 3101, 92 LE2d 460) (1986); *Eiland v. State*, 246 Ga. 112, 116 (268 SE2d 922) (1980). Nevertheless, because some constitutional errors "necessarily render a trial fundamentally unfair," they can never be considered harmless error. *Rose v.Clark*, supra at 478 U. S. 577. Any use at trial of a defendant's involuntary statement is a denial of due process, and cannot be harmless despite otherwise ample evidence to support the conviction. *Mincey v. Arizona*, supra at 397-398. For example, use of a coerced confession (*Payne v. Arkansas*, 356 U. S. 560 (78 SC 844, 2

LE2d 975) (1958)); denial of counsel (*Gideon v. Wainwright,* 372 U. S. 335 (83 SC 792, 9 LE2d 799) (1963); *Strozier v. State,* 187 Ga. App. 16, 17 (369 SE2d 504) (1988)), or adjudication by a biased judge (*Tumey v. Ohio,* 273 U. S. 510 (47 SC 437, 71 LE 749) (1927)) are never considered harmless. In the absence of coercive police tactics inherently offensive to due process, we find no error in this case of the magnitude that would render the trial fundamentally unfair. Therefore, the erroneous admission of the statement may be harmless error if there was no reasonable chance that it contributed to the verdict. See *Milton v. Wainwright,* 407 U. S. 371, 372 (92 SC 2174, 33 LE2d 1) (1972).

Although *Miranda* makes no exception for exculpatory statements, "for the purpose of determining the harmful or harmless nature of the error, whether a defendant's statement is exculpatory or incriminating is material." *Wilson v. Zant,* 249 Ga. 373, 377 (290 SE2d 442) (1982). Metheny's statement that he did not drive the vehicle was consistent with his defense at trial, which included testimony from a witness who claimed she left the scene shortly before the police arrived, and that she, not the appellant, drove the truck down the embankment. Furthermore, an investigating officer gave uncontradicted testimony that he observed Metheny behind the wheel of the truck with the engine running, the lights on and the wheels spinning. The offense of habitual violator, as defined in OCGA § 40-5-58 (c) makes it "unlawful for any person to *operate* any motor vehicle in this state after such person has received notice that his driver's license has been revoked. . . ." (Emphasis supplied.) An operator is defined in OCGA § 40-1-1 (33) as "any person who drives or is in actual physical control of a motor vehicle." In construing the difference between driving and operating a vehicle under the former driving under the influence statute, the court in *Flournoy v. State,* 106 Ga. App. 756, 758-759 (128 SE2d 528) (1962), concluded that while "driving" usually denoted movement of the vehicle in some direction, "operate" has a broader meaning which includes "not only the motion of the vehicle but also acts which engage the machinery of the vehicle. . . . We are of the opinion that one who is sitting under the steering wheel of a car located on a public highway with the motor running, who is in physical control of the vehicle, and who engages the lights of the vehicle, is operating the vehicle. . . ." Given the exculpatory nature of the statement and the uncontradicted testimony regarding Metheny's operation of the vehicle, we find no reasonable possibility that admission of the statement contributed to the verdict. The error was harmless. *Wilson v. Zant,* supra at 249 Ga. 377; *Caplinger v. State,* 185 Ga. App. 476, 477 (364 SE2d 610) (1988).

2. Appellant also enumerates error in the denial of his motion for a new trial on the general grounds that the evidence presented was

insufficient as a matter of law to support the verdict. We find the evidence was sufficient for a rational trier of fact to find the appellant guilty of the offense charged beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

*Judgment affirmed. Pope and Beasley, JJ., concur specially.*

BEASLEY, Judge, concurring specially.

I concur but do not agree with the entire analysis in Division 1, particularly as it relates to the statement, "No, I wasn't driving."

I agree that the statement preceding it was not the result of custodial interrogation. Even if the statement which the majority has made an issue of was in the nature of a response to a question, as the majority views it, it was merely a repetition or affirmation of what had been volunteered. The court did not err in its ruling that the statements were admissible, at the conclusion of the *Jackson-Denno* hearing.

But this statement was not put before the jury. Although it was testified to during the pretrial hearing, the state in its case-in-chief merely elicited the following:

"Q: . . . What was the next thing that happened after you told him that you were placing him under arrest for driving under the influence and habitual violator?

"A: Mr. Metheny stated to me that I had nothing on him, that he wasn't driving the vehicle."

That is the statement which this Court agrees was volunteered and not a response to any questioning. Defendant, in cross-examining the witness, brought out again that after defendant was placed under arrest, he told the officer that he was not driving the vehicle.

I am authorized to state that Judge Pope joins in this special concurrence.

DECIDED DECEMBER 4, 1990.

*Walter J. Clarke*, for appellant.

*Thomas C. Lawler III, District Attorney, Debra K. Turner, Assistant District Attorney*, for appellee.